FILED

2014 OCT 16 PH 2: 56

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY

1  Nomi L. Castle (Bar No. 113636)
   ncastle@castlelawoffice.com
2  David C. Romyn (Bar No. 144602)
   dromyn@castlelawoffice.com
3  CASTLE & ASSOCIATES
   A Professional Law Corporation
4  8383 Wilshire Boulevard, Suite 810
   Beverly Hills, California 90211-2425
5  Telephone:  (310) 286-3400
   Facsimile:  (310) 286-3404
6
7  Attorneys for Plaintiff,
   AMERICAN/BCEGZ, a Joint Venture
8
              UNITED STATES DISTRICT COURT
9
       CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION
10
11  AMERICAN/BCEGZ, a Joint Venture,    Case No. CV 14-08015 SJO (VBK)
12            Plaintiff,                 AMERICAN/BCEGZ'S
                                         COMPLAINT FOR:
13       v.
                                         1.  BREACH OF WRITTEN
14  RAILCRAFT INTERNATIONAL                  CONTRACT;
    (2010), INC., a Canadian corporation;
15  and DOES 1 through 10, and each of   2.  BREACH OF EXPRESS
    them,                                    WARRANTY; AND
16
              Defendants.                3.  CONTRACTUAL
17                                           INDEMNITY
18                                       [DEMAND FOR JURY TRIAL]
19
20
21
22
23       American/BCEGZ, a joint venture ("American/BCEGZ" or "Plaintiff"), by its
24  counsel, and for its Complaint against Defendant RAILCRAFT INTERNATIONAL
25  (2010), INC. ("RAILCRAFT"), and DOES 1 through 10 ("Doe Defendant" or Doe
26  Defendants"), inclusive, and each of them, allege as follows:
27
28

CASTLE & ASSOCIATES
A PROFESSIONAL LAW CORPORATION
www.castlelawoffice.com
(310) 286-3400

1.10-31
COMPLAINT - FINAL

Case No.

AMERICAN/BCEGZ COMPLAINT

Scanned by CamScanner

**PARTIES**

1.     Plaintiff American/BCEGZ is, and at all times relevant was, a joint venture of American Multifamily, Inc., a California corporation ("AMF"), and BCEGI-USA, INC., a Texas corporation ("BCEGI"), and is authorized to do business in the State of California.  At all times relevant, American/BCEGZ held a valid contractor's license issued by the State of California.

2.     AMF is, and at all times relevant was, a California corporation authorized to do business in the State of California and is one of the joint venture members of American/BCEGZ.

3.     BCEGI is, and at all times relevant was, a Texas corporation authorized to do business in the State of California and is one of the joint venture members of American/BCEGZ.

4.     Plaintiff is informed and believes that Defendant Railcraft is, and at all times relevant was, a Canadian corporation authorized to do business in the State of California and with its principal place of business in Surrey, British Columbia, Canada.

5.     DOE Defendants ("DOES") 1 through 10, inclusive, are sued herein under fictitious names.  Plaintiff is ignorant of the true names or capacities of the defendants sued herein under the fictitious names DOE 1 through 10, inclusive.  When their true names and capacities are ascertained, Plaintiff will amend this Complaint by inserting their true names and capacities herein.  Plaintiff is informed and believes, and thereon alleges, that each of the fictitiously named defendants is in some fashion legally responsible for Plaintiff's damages.

6.     Plaintiff is informed and believes further, and thereon alleges that each of said fictitiously named DOES 1 through 10, inclusive, and each of them, was the agent, partner, alter ego, employee  and/or servant of Defendants, acting within the scope of such agency, partnership, alter ego and/or employment, and with the

CASTLE & ASSOCIATES
A PROFESSIONAL LAW CORPORATION
www.castlelawoffice.com
(310) 286-3400

CASTLE & ASSOCIATES
A PROFESSIONAL LAW CORPORATION
www.castlelawoffice.com
(310) 286-3400

1    permission and consent of each of the other defendants, and each is in some manner

2    legally responsible for, and proximately caused, any injuries and damages to

3    Plaintiff alleged herein, and/or each otherwise has an interest in the matters and

4    property adjudicated herein.

5                    **JURISDICTION AND VENUE**

6          7.    Diversity exists as AMF is a California corporation and BCEGI is a

7    Texas corporation and upon information and belief Railcraft is a business entity that

8    exists by virtue of, and has its principal place of business in, British Columbia

9    Canada.   As more fully described below, the amount in controversy exceeds

10   $75,000.

11         8.    This Court has jurisdiction over Railcraft because Railcraft has

12   purposefully availed itself of the benefits and protections of the State of California,

13   and knowingly entered into a contract with Plaintiff, who is a California joint

14   venture, and knowingly transacted affairs and conducted business with Plaintiff in

15   this district.

16                    **GENERAL ALLEGATIONS**

17         9.    American/BCEGZ incorporates paragraphs 1 through 8 inclusive, of

18   this Complaint as though fully set forth herein.

19         10.   On or about December 14, 2011, American/BCEGZ entered into a

20   written subcontract with Defendant Railcraft requiring among other things, that

21   Railcraft  provide "all supervision, shop and field labor, engineering and design,

22   tools, equipment, materials and supplies necessary" for the manufacture of

23   "ALUMINUM GUARD RAIL AND AMENITIES LOUNGE ENCLOSURES"

24   ("Railcraft products") in conformity with certain performance specifications and

25   appropriate for use and installation in a new apartment complex that Plaintiff

26   contracted with The Shores, LLC (Owner) to construct at 4201 Via Marina, Marina

27   Del Ray, CA 90292 (the "Project") as more fully described and specified in the

28

3

Case No.

1·10-32
COMPLAINT - FINAL

1  contract documents (the "Subcontract").   Plaintiff agreed to pay Railcraft the sum
2  of (Eight Hundred Ninety Nine Thousand Seven Hundred Thirty Six Dollars and
3  47/100 ($899,736.47) in exchange for Railcraft's products.  The Subcontract further
4  required Railcraft to perform and provide such work "necessary to satisfy design
5  criteria, and applicable building codes, and quality workmanship in an efficient and
6  good workman like manner."  A true and correct copy of the Subcontract without
7  the plans and specifications is attached hereto as **Exhibit "A"** and incorporated by
8  reference herein.

9         11.    As part of Railcraft's scope of work under the Subcontract, Railcraft
10 was required to manufacture aluminum rail guards for the balconies of the
11 residential units of the Project and to provide the screws necessary for their
12 assembly and installation.  Pursuant to the Subcontract, Railcraft's aluminum guard-
13 rails were to be fastened by screws provided by Railcraft and installed by
14 American/BCEGZ's subcontractor at the Project site.   The balconies were
15 constructed and guard-rails installed using the screws provided by Railcraft.

16        12.    After the Project was completed and occupied by the owner Shores,
17 LLC, American/BCEGZ received notice from Shores, LLC that various screws
18 provided by Railcraft had failed (screw heads had broken off) for multiple guards-
19 rails resulting in a life-safety issue for occupants of the Project.

20        13.    Both Shores, LLC and American/BCEGZ retained at their own cost and
21 expense third party investigators to analyze the cause and reason for the failure of
22 the screws provided by Railcraft.   The results of the investigation and analysis
23 conducted by the qualified metallurgist for the Owner revealed that the screws
24 supplied by Railcraft failed due to stress corrosion cracking, a process made
25 possible because Railcraft failed to provide the proper quality of screw for the
26 application and that was appropriately compatible for the maritime environment in
27 which the Project is located.

28

CASTLE & ASSOCIATES
A PROFESSIONAL LAW CORPORATION
www.castlelawoffice.com
(310) 286-3400

1.10-32
COMPLAINT - FINAL

14.     There is currently an ongoing arbitration between Shores, LLC and American/BCEGZ concerning various disputes in connection with the design, administration and construction of the Project.  In this arbitration, Shores, LLC has alleged, among other things, that the subject screws provided by Railcraft for the aluminum guard rails are defective, of poor quality, and non-conforming to the requirements of the contract documents and correspondingly is seeking to recover damages against American/BCEGZ for the cost of investigating, designing and constructing a repair for the balcony guardrails caused by Railcraft's poor quality, defective and non-conforming screws.

15.     The damages and costs alleged by Shores, LLC against American/BCEGZ in the arbitration arising out of the defective products delivered by Railcraft under the Subcontract, namely, the defective and non-conforming screws, exceed $75,000.  Plaintiff also has incurred added costs to date as a direct result of the defective screws, including costs of investigation, third party analysis and litigation costs, which exceed $75,000.

16.     Notwithstanding demand by American/BCEGZ, Railcraft has breached its Subcontract by failing and refusing to replace or to pay for the repair and replacement of the defective screws with the proper type of screws as required by the Subcontract.

## FIRST CAUSE OF ACTION

### (Breach of Written Contract Against Railcraft and DOES 1-10, Inclusive)

17.     American/BCEGZ incorporates paragraphs 1 through 16 inclusive, of this Complaint as though fully set forth herein.

18.     Railcraft has breached the Subcontract by among other things:

a.     Failing to provide  appropriate, specification compliant screws for the aluminum guard rail as specified in the Subcontract;

CASTLE & ASSOCIATES
A PROFESSIONAL LAW CORPORATION
www.castlelawoffice.com
(310) 286-3400

1.10-32
COMPLAINT - FINAL

b.    Providing non-conforming screws that were inherently defective for their intended use; and

c.    Notwithstanding demand by American/BCEGZ, failing and refusing to replace the defective screws with the proper type of screws for the aluminum guard rail as required by its Subcontract.

19.    American/BCEGZ performed all material obligations required of it pursuant to the Subcontract, except for those obligations that have been either excused, discharged or prevented by virtue of Railcraft's own breaches and other conduct.

20.    Railcraft's failure to provide the proper type of screws for the aluminum guard rail as specified in the Subcontract constitutes a material default and breach under the Subcontract.

21.    Railcraft's provision of screws that were inherently defective for their intended use for the Project constitutes a material default and breach under the Subcontract.

22.    Railcraft's failure to repair and replace the defective screws supplied by Railcraft for the Project with the proper type of screws for the aluminum guard rail as required by the Subcontract for the Project, notwithstanding demand by American/BCEGZ, constitutes a material default and breach under Subcontract.

23.    Despite timely notice by American/BCEGZ and demand that Railcraft repair and replace the defective screws, Railcraft has failed and refused to cure defects in its work, which constitutes a material breach of the Subcontract.

24.    As a direct and proximate result of the aforementioned default and breaches by Railcraft, American/BCEGZ has suffered damages in an amount according to proof at trial, which is in excess of $75,000.

25.    American/BCEGZ has engaged the services of attorneys to enforce its rights and collect the costs resulting from the default and breach of contract by

CASTLE & ASSOCIATES
A PROFESSIONAL LAW CORPORATION
www.castlelawoffice.com
(310) 286-3400

Case No.

1.10-32
COMPLAINT - FINAL

1 Railcraft, and pursuant to the Subcontract American/BCEGZ is entitled to recover
2 its reasonable attorneys' fees and costs.

3 ### SECOND CAUSE OF ACTION

4 **(Breach of Express Warranty Against Railcraft and DOES 1-10, Inclusive)**

5 26.    American/BCEGZ incorporates paragraphs 1 through 25 inclusive, of
6 this Complaint as though fully set forth herein.

7 27.    Pursuant to the Subcontract, Railcraft expressly warranted that it would
8 perform its work in a good and workmanlike manner, strictly in accordance with the
9 requirements of the Contract Documents, and would be free from all faults and
10 defects.

11 28.    Specifically, Section 2.15 of the Subcontract provides:

12 2.15  WARRANTY  AND  GUARANTEES.  Subcontractor
13 warrants to Contractor and Owner that: (1) the Work
described in this Subcontract will be constructed and fully
14 equipped in a good and workmanlike manner, strictly in
accordance  with  the  requirements  of  the  Contract
15 Documents, and will be free from all faults and defects; (2)
that all materials and equipment furnished under the Contract
16 Documents will be new unless otherwise specified and of
high quality.  All Work not so conforming to these standards
17 will be considered defective.  If required by Contractor,
18 Subcontractor shall furnish satisfactory evidence as to the
kind    and    quality    of    materials    and
19 equipment.  Subcontractor's Warranty under this Section is
20 not limited by final completion of the Work, and shall
survive any termination of this Subcontract.
21

22

23 29.    Specifically, Section 2.16 of the Subcontract also provides:

24 2.16  ADDITIONAL WARRANTIES.  In addition to any
25 other rights and remedies available to Contractor under the
Subcontract, Subcontractor agrees, at its own expense and
26 cost, including, but not limited to, the cost of additional
services by Owner or its authorized representatives, to make
27 all repairs, removal or replacements necessitated by defects
28

CASTLE & ASSOCIATES
A PROFESSIONAL LAW CORPORATION
www.castlelawoffice.com
(310) 286-3400

7

Case No.

in materials or workmanship supplied under the terms of this Subcontract or the Contract Documents, which become evidence with one (1) year after the date of substantial completion or within any longer specific warranty/guarantee period as may be set forth in the Contract Documents or as prescribed by law, and Subcontractor shall obtain and give all other warranties and guarantees specifically required by the Contract Documents, Subcontractor shall make all repairs and replacements promptly upon receipt of written order directing the same from the Contractor. If the Subcontractor fails to make repairs or replacements promptly, Contractor may perform such work and Subcontractor and Subcontractor's Surety shall be liable for the cost thereof, including, but not limited to, the cost of additional services made necessary by such failure.

30.   Railcraft breached the warranty by, among other, failing to use the proper type and quality of screws for the aluminum guard railings that were not inherently defective and would withstand the corrosive nature of the marine environment in which the Project is located.

31.   American/BCEGZ provided Railcraft adequate notice within a reasonable time and within the time specified in the Subcontract after its discovery of Railcraft's breach of warranty.

32.   As a proximate result of Railcraft's breach of warranty, American/BCEGZ has suffered damages in an amount in excess of $75,000.

33.   American/BCEGZ has engaged the services of attorneys to enforce its rights and collect the costs resulting from the breach of warranty by Railcraft, and American/BCEGZ is entitled to recover its reasonable attorneys' fees and costs pursuant to the Subcontract.

/ /

/ /

/ /

CASTLE & ASSOCIATES
A PROFESSIONAL LAW CORPORATION
www.castlelawoffice.com
(310) 286-3400

8

Case No.

1.10-32
COMPLAINT - FINAL

CASTLE & ASSOCIATES
A PROFESSIONAL LAW CORPORATION
www.castlelawoffice.com
(310) 286-3400

### THIRD CAUSE OF ACTION

**(Contractual Indemnity Against Railcraft and DOES 1-10 Inclusive)**

34.    American/BCEGZ incorporates paragraphs 1 through 33 inclusive, of this Complaint as though fully set forth herein.

35.    The Subcontract between American/BCEGZ, on the one hand, and Railcraft, on the other hand, includes an express indemnification provision [Section 2.14] whereby Railcraft agreed to indemnify, defend and hold harmless American/BCEGZ from and against any and "all claims, damages, losses, liens, causes of action, suits, judgments and expenses of any nature, kind or description asserted by any person or entity, whomsoever, arising out of, caused by or resulting from Subcontractor's performance of the Work or any party thereof" pursuant to the Subcontract.

36.    Specifically, Section 2.14 of the Subcontract provides, in pertinent part:

> **2.14    INDEMNIFICATION.** To the fullest extent permitted by law, Subcontractor shall and does agree, as a material condition of this Subcontract, to indemnify, protect, defend and hold harmless Contractor, its agents, employees, officers, directors, shareholders, insurers, and or anyone acting on its or their behalf, from and against all claims, damages, losses, liens, causes of action, suits, judgments and expenses of any nature, kind or description asserted by any person or entity, whomsoever, arising out of, caused by or resulting from Subcontractor's performance of the Work or any party thereof. The indemnification obligation in this Section shall apply where the claims, damages, losses, liens, causes of action, suits, judgments and expenses of any nature, kind or description asserted by any person or entity, whomsoever, or liability arise in part from the concurrent negligence of Contractor.
>
> \*\*\*
>
> Subcontractor acknowledges and agrees that its obligations under this Section to indemnify and hold harmless Contractor

Case No.

AMERICAN/BCEGZ COMPLAINT

extends to and includes any and all obligation of Contractor to indemnify Owner set forth in the Contract Documents, to the extent of Subcontractor's scope work described in this Subcontract. Further, Subcontractor acknowledges an agrees that its obligations of indemnity extends beyond final completion of the work and acceptance by owner, to the fullest extent required by the Contract Documents.

37.     American/BCEGZ has performed all obligations required to be performed pursuant to the terms of the Subcontract, with the exception of any obligations for which said performance was excused by reason of Railcraft's aforementioned breaches.

38.     American/BCEGZ has made demand to Railcraft for indemnification with respect to the purported claims of Shores, LLC in the ongoing arbitration between Shores, LLC and American/BCEGZ pursuant to the Subcontract.

39.     Pursuant to the indemnification provision set forth in section 2.14 herein, American/BCEGZ is entitled to indemnification from Railcraft, in any amount that American/BCEGZ may be held liable to pay to Shores, LLC in the arbitration as a result of Railcraft's breaches hereinabove described.

40.     In addition, Railcraft is obligated to pay the attorneys' fees and costs incurred by American/BCEGZ in connection with its response to the Owner's complaint with Railcraft's products and in responding in the arbitration as to the issues relating to or concerning Railcraft's breaches, defective work, and failures to repair, replace and perform pursuant to the Subcontract.

**WHEREFORE**, Plaintiff prays as follows for all causes of action:

**ON THE FIRST CAUSE OF ACTION:**

1.     For actual damages including, without limitation, the cost of investigating, testing, repairing and replacing the defective work of Railcraft for the Project;

CASTLE & ASSOCIATES
A PROFESSIONAL LAW CORPORATION
www.castlelawoffice.com
(310) 286-3400

I-10-32
COMPLAINT - FINAL

Case No.

AMERICAN/BCEGZ COMPLAINT

1  **ON THE SECOND CAUSE OF ACTION:**

2       2.    For actual damages including, without limitation, the cost of

3  investigating, testing, repairing and replacing the defective work of Railcraft for the

4  Project;

5  **ON THE THIRD CAUSE OF ACTION:**

6       3.    For judgment against Railcraft and in favor of American/BCEGZ for

7  (a) the amount of any arbitration award issued against American/BCEGZ in the

8  current arbitration between Shores, LLC and American/BCEGZ relating to

9  Railcraft's performance under the Subcontract for the Project, and all reasonable

10  attorneys' fees, costs, and expenses incurred by American/BCEGZ in defense of the

11  arbitration as to Railcraft's performance under the Subcontract and (b) all costs and

12  charges incurred by American/BCEGZ to third party engineers and testing

13  companies for investigating and determining the cause for the failure of the screws

14  provided by Railcraft;

15  **ON ALL CAUSES OF ACTION:**

16       4.    For reasonable attorneys' fees incurred by American/BCEGZ in its

17  efforts to recover amounts due and owing and prosecuting all of the claims set forth

18  herein and defending against all purported claims alleged by Shores, LLC in the

19  ongoing arbitration between Shores, LLC and American/BCEGZ, as allowed under

20  the Subcontract and any applicable statutory provisions for recovery of attorneys'

21  fees;

22       5.    For American/BCEGZ's costs of suit herein;

23       6.    For prejudgment interest at a maximum rate permitted by law; and

24       7.    For such further relief as the Court deems just and proper.

25  //

26  //

27  //

28

CASTLE & ASSOCIATES
A PROFESSIONAL LAW CORPORATION
www.castlelawoffice.com
(310) 286-3400

1.10-32
COMPLAINT - FINAL

AMERICAN/BCEGZ COMPLAINT

Case No.

CASTLE & ASSOCIATES
A PROFESSIONAL LAW CORPORATION
www.castlelawoffice.com
(310) 286-3400

DATED:  October 16, 2014          CASTLE & ASSOCIATES
                                  A Professional Law Corporation


                                  By:        /s/
                                      _____
                                      David C. Romyn
                                      Attorneys for Plaintiff,
                                      AMERICAN/BCEGZ, a Joint Venture


## **DEMAND FOR JURY TRIAL**

Plaintiff AMERICAN/BCEGZ, a joint venture, hereby demands a jury trial on all issues triable of right by a jury.

DATED:  October 16, 2014          CASTLE & ASSOCIATES
                                  A Professional Law Corporation


                                  By:        /s/
                                      _____
                                      David C. Romyn
                                      Attorneys for Plaintiff,
                                      AMERICAN/BCEGZ, a Joint Venture

Case No.

1.10-32
COMPLAINT - FINAL

AMERICAN/BCEGZ COMPLAINT

# EXHIBIT "A"
# TO COMPLAINT

# SUBCONTRACT
(Subject to Arbitration)

Contractor License No.    949618                                              Job No.    785

Subcontractor License No    875248                                        Subcontract No. 785-510-08500

THIS AGREEMENT is made on **October 21, 2011** by and between the Contractor and Subcontractor named below and is as follows:

## A.  DEFINITIONS
The following terms, for purpose of this Subcontract, shall have the meaning shown:

| | | | |
|---|---|---|---|
| 1. | Contractor<br>Address: | **AMERICAN/ BCEGZ, A JOINT VENTURE**<br>16351 Gothard Street, Suite A<br>Huntington Beach, CA  92647 | 714-377-1414   fax 714-377-1417 |
| 2. | Subcontractor<br>Address: | **RAILCRAFT INTERNATIONAL (2010), INC.**<br>13272 Comber Way<br>Surrey, BC Canada V3W 5V9 | 604 635 3771   fax 604 543 9019 |
| 3. | Project<br>Address: | **SHORES**<br>4201 Via Marina<br>Marina Del Rey, CA 90292 | |
| 4. | Owner<br>Address: | **SHORES, LLC**<br>c/o Pacific Development Services<br>5855 Uplander Way, Suite A<br>Culver City, CA 90230 | 310-216-4800   fax 310-216-4805 |
| 5. | Architect<br>Address: | **NADEL RESIDENTIAL ARCHITECTS, LLP**<br>1990 South Bundy Drive, 4th Floor<br>Los Angeles, CA 90025 | 310-826-2100   fax 310-826-0182 |

RECEIVED on NOV 16 2011 American Main Office

6.   "Contract Documents" -- the "Contract Documents" consist of this Subcontract ("Subcontract"), its Subcontract General Terms, any exhibit or addenda attached hereto, the Contract between Owner and Contractor ("Prime Contract"), all revisions and/or special conditions of the Prime Contract, all plans and specifications for the Project ("Plans and Specifications") and all addenda, amendments and modifications thereto issued either prior or subsequent to the execution of this Subcontract.

7.   "Work" means all work described in Exhibit "A" through "F" listed below and the document referenced herein for the trade of **ALUMINUM GUARD RAIL AND AMENITIES LOUNGE ENCLOSURES** which is described in, or which is reasonably inferable from the Contract Documents and not limited by a specific section of the Plans and Specifications including, without limitation, the furnishing of all supervision, shop and field labor, engineering and design, tools, equipment, materials and supplies necessary to perform the same. The Work is to be complete in all respects and includes all work necessary to satisfy design criteria and applicable building codes, and provides for the furnishing of quality workmanship finished in an efficient and good workmanlike manner.  The Work includes all requirements of this Subcontract.

| | | |
|---|---|---|
| A. List of Drawings and Specifications | B. Supplementary General Provisions | C. Additional Specific Requirements |
| D. Schedule | E. Insurance Requirements | F. Davis Bacon Prevailing Wage |

## B.  SUBCONTRACT SUM
Contractor agrees to pay Subcontractor for the completion of the Work and the performance of this Subcontract the sum of **EIGHT HUNDRED NINETY-NINE THOUSAND, SEVEN HUNDRED THIRTY-SIX DOLLARS AND 47/100 CENTS (\*\*\* \$899,736.47\*\*\*)**, subject to additions and/or deletions for changes agreed upon or to be determined as hereinafter provided.  Partial progress payments will be made to Subcontractor each month subject to the terms and conditions of this Subcontract, in the amount equal to ninety percent (90%) of the value, computed on the basis of the price set forth above, of that portion of the Work then complete, less the aggregate of previous payments. ALL APPLICABLE SALES AND USE TAXES ARE INCLUDED.

## C.  BONDS
Prior to commencement of the work, if required by the Owner and/or the Contractor, Subcontractor shall furnish performance and payment bonds from a surety licensed and authorized to do business in the State where work will be performed, each in an amount equal to the full Subcontract price.  The Owner and/or the Contractor shall pay for such bonds.

## D.  SUBCONTRACT GENERAL TERMS
The Subcontract General Terms dated March 14, 2011, are attached hereto and incorporated by reference in this Subcontract Agreement.

## E.  ADDITIONAL PROVISIONS
The Additional Provisions are attached hereto and made a part of this Subcontract Agreement.

Subcontractor Initials

NAME AND POSITION OF PERS    S ALLOWED TO SIGN LIEN WAIVER I    EASES:

<u>NAME</u>                         <u>POSITION</u>

1. _____     _____

2. _____     _____

3. _____     _____

4. _____     _____

5. _____     _____

6. _____     _____

7. _____     _____

IN WITNESS WHEREOF, the parties hereto have executed this Subcontract by their proper officers or duly authorized agents, and this Subcontract is not valid until both the Contractor and Subcontractor have executed this Subcontract.

CONTRACTOR:                                    SUBCONTRACTOR:

AMERICAN/ BCEGZ, A JOINT VENTURE               RAILCRAFT INTERNATIONAL (2010), INC.

By:___Jeff Y. Chen___                          By:___Jeff Bailer___

Its:___Sr. Vice President/American Multifamily, Inc.___   Its:___VICE PRESIDENT___

Date:___11/16/11___                            Date:___Nov. 14/11___

By:___Joseph S. Schuelke___

Its:___Secretary and COO/ BCEGZ-USA, Inc.___

Date:___12/14/11___

Subcontractor's Federal Employer Identification No. _____

Subcontractor's State Tax No. _____

NOTE INDEMNIFICATION Article II Paragraph 2.14

# SHORES
## SUBCONTRACT GENERAL TERMS
### TABLE OF ARTICLES

ARTICLE I. PERFORMANCE OF WORK ............ 1
1.01 ............................................................ 1

ARTICLE II. SUBCONTRACTOR .......................... 1
2.01 Relationship of Contract Documents to Subcontract;
 Review by Subcontractor ......................... 1
2.02 Independent Contractor ............................. 1
2.03 Subcontractor's Investigation and Representation 1
2.04 Compliance With Law ................................ 1
2.05 Labor ....................................................... 2
2.06 Shop, Design and As-Built Drawings ........ 2
2.07 As-Built / Record Drawings ...................... 2
2.08 No Substitution ........................................ 2
2.09 Subcontractor's Responsibility for Changes and
 Design ...................................................... 2
2.10 Preliminary, Outline or Unfinished Plans and
 Specifications .......................................... 2
2.11 Permits, Fees, Temporary, Close-Up ........ 2
2.12 Completion of Subcontractor's Work ....... 2
2.13 Other Contracts ....................................... 3
2.14 Indemnification ...................................... 3
2.15 Warranty and Guarantees ........................ 3
2.16 Additional Warranties ............................. 3
2.17 Remedies of Contractor ........................... 3

ARTICLE III. CONTRACT REQUIREMENTS ....... 3
3.01 Prime Contract Requirements .................. 3
3.02 Relationship of Contractor and Subcontractor 3
3.03 Owner's Approval .................................... 3
3.04 Bond Requirements .................................. 3
3.05 Covenant Against Contingent Fees .......... 3
3.06 Possession Prior to Completion ............... 4

ARTICLE IV. PAYMENTS TO SUBCONTRACTOR 4
4.01 Application for Payment .......................... 4
4.02 Requirements for Application ................... 4
4.03 Time of Payment ..................................... 4
4.04 No Acceptance ......................................... 4
4.05 Withhold and Deduction .......................... 4
4.06 Schedule of Values .................................. 4

4.07 Mitigation ............................................... 4
4.08 Final Payment .......................................... 4

ARTICLE V. CHANGES .................................... 4
5.01 Change Order ........................................... 4
5.02 Limitation on Changes Requested by
 Subcontractor .......................................... 4
5.03 Compensation on a Cost-Plus Basis ......... 5
5.04 Change Order Release .............................. 5

ARTICLE VI. DELAYS AND EXTENSIONS OF TIME 5
6.01 Delays ..................................................... 5
6.02 Extension of Time .................................... 5
6.03 Limitation on Extension of Time ............. 5
6.04 Liquidated Damages ................................. 5

ARTICLE VII. DEFAULT AND TERMINATION ... 5
7.01 Default ..................................................... 5
7.02 Notice and Opportunity to Cure ............... 6
7.03 Termination and Damages ........................ 6
7.04 No Waiver ................................................ 6
7.05 Termination for Convenience .................... 6

ARTICLE VIII. DISPUTES AND ARBITRATION ... 6
8.01 Arbitration ............................................... 6
8.02 Conditions for Arbitration Demand .......... 6
8.03 Power of Arbitrators ................................ 7
8.04 Notice of Demand for Arbitration ............ 7
8.05 Award ...................................................... 7
8.06 No Waiver ................................................ 7
8.07 Joinder of Surety ...................................... 7
8.08 Limitation ................................................ 7
8.09 Inclusion of Subcontractor ....................... 7
8.10 Additional Parties .................................... 7
8.11 Governing Law ......................................... 7
8.12 Discovery ................................................. 7
8.13 No Application of Arbitration ................... 7

ARTICLE IX. RESPONSIBILITY FOR REPAIRS ... 7
9.01 Notice to Contractor ................................. 7

ARTICLE X. INSURANCE ................................. 7
10.01 Procurement of Insurance Coverage ........ 7
10.02 Continuation of Insurance Coverage ....... 7
10.03 Additional Insureds ................................ 8
10.04 Evidence of Insurance ............................ 8
10.05 No Limitation of Liability ....................... 8
10.06 Coverages Required and Limits of Liability 8
10.07 Waiver of Subrogation ............................ 8

ARTICLE XI. MISCELLANEOUS WORK ............ 8
11.01 Clarification of Indemnification .............. 8
11.02 Remedies Cumulative ............................. 8
11.03 Successors and Assigns ........................... 8
11.04 Written Notice ........................................ 8
11.05 Attorney's Fees ....................................... 8
11.06 Severability ............................................ 8
11.07 Third Party Beneficiary .......................... 8
11.08 Captions ................................................. 8
11.09 Governing Law ....................................... 9
11.10 Complete Integration .............................. 9

ARTICLE XII. REFERENCE PROVISIONS .......... 9
12.01 Superintendence and Cooperation ........... 9
12.02 Site Condition ........................................ 9
12.03 Schedule ................................................ 9
12.04 Contractor's schedule ............................. 9
12.05 Storage of Materials, Vehicular Traffic and Delivery
 Points ..................................................... 9
12.06 Responsibility for Work and Materials .... 9
12.07 Working Hours; "Piece Work" ................ 9
12.08 Layout ................................................... 9
12.09 Duties of Subcontractor .......................... 10
12.10 Responsibilities for Damage or Loss ....... 10
12.11 Safety of Persons .................................... 10
12.12 Reporting of All Accidents ...................... 10
12.13 Protection of Work and Property ............ 10
12.14 Meetings ................................................ 10
12.15 Hoisting ................................................. 10
12.16 Daily Reports ......................................... 10

## ARTICLE I. PERFORMANCE OF WORK

1.01 Subcontractor agrees to perform the Work in accordance with the terms of the Contract Documents for the consideration herein stated.

## ARTICLE II. SUBCONTRACTOR

2.01 RELATIONSHIP OF CONTRACT DOCUMENTS TO SUBCONTRACT; REVIEW BY SUBCONTRACTOR. The Contract Documents are incorporated herein by reference for all purposes as fully and completely as if the same were set forth verbatim. Subcontractor acknowledges its opportunity and obligation to familiarize itself with the Contract Documents, copies of which have been made by and are available with Contractor. If any provision of the Contract Documents is inconsistent with the terms of this Subcontract, this Subcontract will control; provided, however, that the Contract Documents are specifically intended to supplement, rather than modify, the rights and obligations of the Subcontractor, as described in this Subcontract, and the Contract Documents shall be interpreted so as to give effect to this intent.

The Subcontractor warrants that it has examined all sections of the Contract Documents to ascertain the duties and responsibilities encompassed by its scope of the Work, and has further examined the Plans and Specifications to ascertain the scope of work of other trades in order to familiarize itself with any and all provisions and/or requirements affecting Subcontractor's scope of Work. Subcontractor shall promptly notify Contractor in writing of any errors, discrepancies, or inconsistencies which it may find therein. Upon receipt of said notification the Contractor will instruct the Subcontractor as to the measures to be taken and the Subcontractor shall comply with the Contractor's instructions. Subcontractor further warrants that, on the basis of its examination of the Contract Documents, and inspection of the site and the location to the Work, it is fully and completely conversant and knowledgeable as to the scope of Work required under the Contract Documents and this Subcontract.

2.02 INDEPENDENT CONTRACTOR. Subcontractor expressly warrants that it is or, prior to the start of the Work and during the entire progress of the Work hereunder, will be, an independent licensed contractor and employing unit subject as an employer to all applicable employment and unemployment compensation statutes and regulations so as to relieve Contractor of any responsibility or liability for treating Subcontractor's employees as employees of Contractor for the purpose of maintaining any records, making reports and payments of taxes, premiums, payments, or contributions. Subcontractor agrees to indemnify and hold Contractor harmless and reimburse it for any expense or liability incurred under any applicable statutes and/or obligations in connection with employees of Subcontractor, including any amount Contractor may become liable to pay on behalf of Subcontractor's employees, where such obligations and/or liabilities are charged to Contractor or to its individual reserve account, pursuant to any collective bargaining agreement or Subcontract obligation.

2.03 SUBCONTRACTOR'S INVESTIGATION AND REPRESENTATION. The Subcontractor represents that it is fully capable, licensed where required, and experienced to perform the Work required by this Subcontract and acknowledges that prior to the execution of this Subcontract it has, by its own independent investigation:

(a) Ascertained the general and local conditions which may be involved in performing the Work including, but not limited to, those conditions dictated by the location of the Work, its accessibility, dimensions, nature of the site, quantity of surface and subsurface water, materials, or obstacles which may be encountered, the nature and extent of existing Work within or adjacent thereto, other Work being performed thereon, the facilities for transportation, disposal, handling and storage of materials, availability of labor, the labor wage and fringe benefit rates and likelihood of increases to such labor and fringe benefit rates, the location and availability of utilities and access roads, the nature of equipment and facilities needed for Subcontractor's prosecution of the Work, uncertainties of weather and/or physical conditions at the site, and all other matters which could in any way affect Subcontractor's performance of the Work or the cost thereof under this Subcontract;

(b) Familiarized itself as to the amount and nature of equipment, services, labor and materials required for the Work and warrants that sufficient quantities of such equipment, services, labor and materials are available to Subcontractor to complete the Work;

(c) Carefully estimated and determined the quantity of the Work, the cost of performing the Work, and carefully applied its own prices to such quantities; and

(d) Verified all information furnished by Contractor and/or others and is satisfied with the correctness and accuracy of that information. Subcontractor acknowledges that the information provided to it has been provided to Contractor by others, and that Contractor assumes no responsibility or liability for the accuracy or sufficiency of this data or information.

Any failure of the Subcontractor to acquaint itself with all the information concerning the items listed above and any other items or conditions that would affect the performance or cost of the Work described in this Subcontract will not relieve Subcontractor from the responsibility for properly performing and completing the Work.

2.04 COMPLIANCE WITH LAW. Subcontractor agrees that, as regards to:

(a) the production, purchase and sale, furnishing and delivering, pricing, and use or consumption of materials, supplies and equipment;

Initialed:
Subcontractor/Supplier

3/14/11

# SHORES
## SUBCONTRACT GENERAL TERMS

(b) the hiring, tenure or conditions of employment of employees and their hours of work and rates and payment of their wages; and

(c) the performance of this Subcontract in all other respects; that Subcontractor will maintain and keep available for inspection, all necessary records and make all payments, reports, collections and union dues or deductions, and otherwise perform any and all requirements so as to fully comply with all Federal, State and local statutes, ordinances, rule and regulations and utility requirements in regards to any and all said matters insofar as they affect or involve Subcontractor's performance of this Subcontract, also as to fully relieve Contractor from and protect it against any and all responsibility or liability therefore.

**2.05 LABOR.** Subcontractor shall staff the Project with an adequate number of laborers who are skilled and competent in the performance of the Work. Subcontractor, in connection with the Work, shall comply with and be bound by any collective bargaining agreements executed by Contractor or on Contractor's behalf and any collective bargaining provisions in the Contract Documents to the extent that the provisions of such agreements apply to subcontractors. Subcontractor shall also comply with all collective bargaining agreements to which Subcontractor is signatory. Failure at any time to comply with any of the provisions of such agreements will, at the sole discretion of Contractor, be cause for termination of the Subcontractor under the "Default" provisions.

If, by reason of off site strikes, picketing or disputes of any nature, Subcontractor should be persistently, repeatedly, or for a period of two (2) consecutive days, unable to supply proper personnel, materials or equipment to prosecute the Work, then the Contactor may at its sole discretion terminate the Subcontract and proceed in accordance with the "Default" provisions in Article VII – Default and Termination. Subcontractor shall pay for all fringe benefits applicable to its labor and shall provide and pay for any trust fund bonds whenever such may be required.

**2.06 SHOP, DESIGN AND AS-BUILT DRAWINGS.** Subcontractor shall furnish such shop drawings, samples, and production data as are, or may be from time to time, required by the Contract Documents. As utilized herein, the term "Shop Drawings" includes drawings, diagrams, layouts, schematics, descriptive literature, illustrations, schedules, performance and test data and similar materials prepared by Subcontractor or any manufacturer, supplier or distributor to explain, in detail, specific portions of the Work required by this Subcontract. The term "Samples" means physical examples furnished by Subcontractor to illustrate materials, equipment or workmanship, and to establish standards by which the Work will be judged. The term "Product Data" means illustrations, standard schedules, performance charts, instructions, brochures, diagrams and other information furnished by Subcontractor to illustrate a material, product or system for some portion of the Work. Subcontractor shall submit all shop drawings, samples and product data for review as required by the Contract Documents or as required by Contractor, Owner or its authorized representative, to Contractor for Contractor's submittal to the Owner or its authorized representative. Contractor reserves the right to decline approval or reject any shop drawing, sample or product data which, in Contractor's sole judgment, do not comply with the requirements of the Contract Documents. Subcontractor agrees to refrain from proceeding with fabrication or installation of any material until Owner or its authorized representative has approved the submitted shop drawings, samples or product data.

**2.07 AS-BUILT / RECORD DRAWINGS.** As used herein the term "As-Built / Record Drawings" shall mean all drawings, blueprints and plans, together with such shop drawings as may be required, to accurately and comprehensively depict the final construction of improvements undertaken by Subcontractor pursuant to this Subcontract for the Project. Subcontractor understands that the as-built/record drawings are for the purpose of illustrating the final as-built scope of Work undertaken by Subcontractor, and that accuracy and completeness of such drawings are material conditions of this Subcontract. All as-built/record drawings shall be updated by Subcontractor on a regular basis, as determined by Contractor's superintendent in charge or project manager, and Contractor shall be provided access to such as-built/record drawings by Subcontractor in order to facilitate Contractor's periodic review of the status and accuracy of Subcontractor's as-built/record drawings. Subcontractor further understands the Contractor's periodic review is performed solely for the purpose of determining the extent of Subcontractor's periodic updating of such as-built/record drawings; Subcontractor further agrees that this Section shall not be deemed or construed as imposing any obligation or duty upon Contractor to periodically review such as-built/record drawings for any purpose. Further, Subcontractor agrees to be solely responsible and liable for the accuracy and completeness of Subcontractor's as-built/record drawings, and to save harmless and indemnify Contractor for any and all cost, expenses, or damages therefore.

**2.08 NO SUBSTITUTIONS.** No substitution of materials, equipment, products or any other items which Subcontractor is obligated to provide under the terms of the Contract Documents, shall be made in Subcontractor's Work unless such substitutions are permitted in the Contract Documents, and only then upon Subcontractor first applying for and receiving all approvals from Contractor, Owner and/or its authorized representative required under the Contract Documents for such substitutions. Subcontractor further agrees to indemnify and hold harmless Contractor for any such substitutions, regardless of whether Subcontractor has obtained the required approvals therefore.

**2.09 SUBCONTRACTOR'S RESPONSIBILITY FOR CHANGES AND DESIGN.** To the extent Subcontractor shall make changes in design for its scope of Work stated in this Subcontract, including dimensional changes, either through shop drawings, samples, product data or actual field work, Subcontractor accepts all responsibility and liability for the failure of such design to satisfy the requirements of good and prudent design practice in the locality in which the Work is performed. Further, Subcontractor accepts all responsibility and liability for the adequacy of such design and acceptance of such design changes by Owner, its authorized representative and/or Architect. Any defects, deficiencies or inadequacy which may result or arise out of, or be caused by Subcontractor's design changes shall be remedied by Subcontractor, at its own expense, in spite of any approvals to such design given by Owner, its authorized representative or Architect, unless such design changes are specifically included in a written change order to this Subcontract. In addition, Subcontractor shall bear and be responsible for the cost of any additional work, repair or replacement of its Work incurred by other trades or Contractor resulting from such design changes. If the Contract Documents require the Subcontractor to provide and furnish design professional services, including drawings, shop drawings, samples or product data, Subcontractor accepts all responsibility for the adequacy and safety of any such design professional services even with, including without limitation, acceptance by Owner, its authorized representative or Architect for the sufficiency of such design professional services. The cost of any defect or deficiency resulting from, arising out of or caused by any failure or inadequacy of such design professional services shall be borne by Subcontractor, including all resultant cost of work by other trades or Contractor, the cost of further design professional services, or any and all further resultant damage. Subcontractor further agrees to remedy any such defects or deficiency, at its own expense, and shall save harmless and indemnify Contractor therefore.

**2.10 PRELIMINARY, OUTLINE OR UNFINISHED PLANS AND SPECIFICATIONS.** If the scope of Work described in this Subcontract is based upon preliminary, outline or otherwise unfinished drawings, specifications or documents, Subcontractor shall cooperate and coordinate with Owner, its authorized representative, the Project Architect and/or Engineers, together with Contractor and other trades, in developing and finalizing project drawings and specifications, so as not to impose additional work or cost on other trades or Contractor, or cause an increase in the Subcontract sum. To the extent that the final drawings and specifications alter, amend or modify the scope of Work in the Subcontract, as originally contemplated, then the Subcontract sum shall be equitably adjusted to the extent that such adjustment is provided in the Contract Documents

**2.11 PERMITS, FEES, TEMPORARY, CLEAN-UP.** Subcontractor agrees to pay the cost of all permits, fees, sales taxes, gross income tax, water, utilities, temporary heating and lighting, hoisting, and to provide proper protection of Subcontractor's and the existing Work of Owner, Contractor, and others already in place. Subcontractor further agrees to perform such clean up and removal of debris created by its own work and/or as otherwise may be directed by Contractor, or required by the Contract Documents at no additional cost to the Contractor. Subcontractor shall pay for, furnish and obtain approval of samples, tests, shop drawings, as-built drawings, guarantees, reports, etc., connected with, called for, or necessary for the Work.

**2.12 COMPLETION OF SUBCONTRACTOR'S WORK.** When Subcontractor is of the opinion that its Work or designated portion thereof is substantially complete, as defined in the Contract Documents, Subcontractor shall prepare a list of items to be completed or corrected (hereinafter "Punch List"), for submission to Contractor. Subcontractor shall repair, replace or correct immediately any discrepancies shown on its own Punch List, as well as on such lists furnished to it by Contractor, so that final inspection of the Project can be expedited as quickly as possible. The failure to include any items on such Punch List does not alter the responsibility of Subcontractor to complete all Work in accordance with the Contract Documents. When Contractor, on the basis of its own inspection, determines that the Work of Subcontractor is substantially complete, Contractor shall list the items of Work yet to be completed or corrected according to its own inspection of the Work. Subcontractor shall correct any and all

3/14/11

Initialed:
Subcontractor/Supplier

# SHORES
## SUBCONTRACT GENERAL TERMS

deficiencies noted on any Punch List prepared by Contractor, Owner or its authorized representatives, within two (2) days after notification, so as to expedite final completion of the Work and acceptance by Owner.

2.13 OTHER CONTRACTS. It is understood and agreed that the Work provided for in this Subcontract constitutes only a part of the Project being performed for Owner by Contractor and other subcontractors. Subcontractor, therefore, agrees to perform the Work in such a manner as will not injure, damage or delay any other work performed by Contractor or any other subcontractors, and further agrees to reimburse Contractor for any damages or delay incurred by Contractor or caused to such other work by Subcontractor, its agents, employees or anyone acting at its direction.

2.14 INDEMNIFICATION. To the fullest extent permitted by law, Subcontractor shall and does agree, as a material condition of this Subcontract, to indemnify, protect, defend and hold harmless Contractor, its agents, employees, officers, directors, shareholders, insurers and/or anyone acting on its or their behalf, from and against all claims, damages, losses, liens, causes of action, suits, judgments and expenses of any nature, kind or description asserted by any person or entity whomsoever, arising out of, caused by or resulting from Subcontractor's performance of the Work or any part thereof. The indemnification obligation in this Section shall apply where the claims, losses, damages, causes of action, suits, judgment and expenses of any nature, kind or description asserted by any person or entity whomsoever, or liability arise in part from the concurrent negligence of Contractor. It is the expressed intention of the parties hereto, both Subcontractor and Contractor, that the indemnity provided for in this paragraphs in indemnity by Subcontractor to indemnify and protect Contractor from the consequences of Contractor's own concurrent negligence whether that negligence is a concurring cause of the injury, death, or damage. This indemnify obligation includes, but is not limited to, claims for wrongful death, personal injury, disability, property damage, emotional distress, mental anxiety, lost income, lost profits, diminution in market value, and/or liens on the Project. This indemnification obligation further extends to and includes any and all claims, suits, expense or damage arising out of or resulting from alleged or actual infringement or violation of any patent, copyright, trademark, license or right to use thereunder on the part of the Subcontractor, its materialmen, subcontractors or anyone acting on their behalf, in connection with the performance of the Work by Subcontractor.

Subcontractor acknowledges and agrees that its obligation under this Section to indemnify and hold harmless Contractor extends to and includes any and all obligation of Contractor to indemnify Owner as set forth in the Contract Documents, to the extent of Subcontractor's scope work described in this Subcontract. Further, Subcontractor acknowledges and agrees that its obligation of indemnity extends beyond final completion of the work and acceptance by Owner, to the fullest extent required by the Contract Documents.

In any and all claims for bodily and/or personal injury asserted against Contractor or anyone acting on its behalf, by and employee of Subcontractor or any person acting on behalf of Subcontractor in the performance of the Work described herein, Subcontractor's indemnification obligation shall not be limited in any way by any statutory or regulatory limitation on the amount or type of damages, compensation or benefits payable by or for Subcontractor under any Workers Compensation statutes, disability benefits or employee benefit legislation. The contractual obligation of indemnity by

Subcontractor as set forth herein, shall not be amended or modified in any way by Workers Compensation statutes, but instead represents a separate and independent express contractual undertaking by Subcontractor. It is the express intent of the parties hereto, including Subcontractor's Surety that all requirements of the Contract Documents, including Subcontractor's insurance and indemnification obligations, shall be and become the obligation of Surety.

2.15 WARRANTY AND GUARANTEES. Subcontractor warrants to Contractor and Owner that: (1) the Work described in this Subcontract will be constructed and fully equipped in a good and workmanlike manner, strictly in accordance with the requirements of the Contract Documents, and will be free from all faults and defects; (2) that all materials and equipment furnished under the Contract Documents will be new unless otherwise specified and of high quality. All Work not so conforming to these standards will be considered defective. If required by Contractor, Subcontractor shall furnish satisfactory evidence as to the kind and quality of materials and equipment. Subcontractor's warranty under this Section is not limited by final completion of the Work, and shall survive any termination of this Subcontract.

2.16 ADDITIONAL WARRANTIES. In addition to any other rights and remedies available to Contractor under the Subcontract, Subcontractor agrees, at its own expense and cost, including, but not limited to, the cost of additional services by Owner or its authorized representatives, to make all repairs, removal or replacements necessitated by defects in materials or workmanship supplied under the terms of this Subcontract or the Contract Documents, which become evident within one (1) year after the date of substantial completion or within any longer specific warranty/guarantee period as may be set forth in the Contract Documents or as prescribed by law, and Subcontractor shall obtain and give all other warranties and guarantees specifically required by the Contract Documents. Subcontractor shall make all repairs and replacements promptly upon receipt of written order directing the same from the Contractor. If the Subcontractor fails to make repairs or replacements promptly, Contractor may perform such work and Subcontractor and Subcontractor's Surety shall be liable for the cost thereof, including, but not limited to, the cost of additional services made necessary by such failure.

2.17 REMEDIES OF CONTRACTOR. If Subcontractor does not proceed with the correction of defective or non-conforming work pursuant to Subcontractor's scope of work defined herein and any additional warranties, within a reasonable time fixed by written notice from Contractor, in addition to any other remedies available to Contractor, Contractor may remove such defective or non-conforming work and may store the materials or equipment at the expense of Subcontractor. If Subcontractor does not pay the cost of such removal and storage within ten (10) days thereafter, Contractor may, upon ten (10) additional days written notice, sell such work at auction or a private sale and shall account for the net proceeds thereof, after deducting all of the cost that should have been borne by Subcontractor, including without limitation, compensation for additional design professional services made necessary thereby. If the proceeds of such sale did not cover all costs which Subcontractor should have borne, the difference shall be charged to Subcontractor and an appropriate change order to the Subcontract Sum shall be issued. If the payments then or thereafter to Subcontractor are insufficient to cover such amount, Subcontractor and/or its Surety shall pay the difference to Contractor.

## ARTICLE III. CONTRACT REQUIREMENTS

3.01 PRIME CONTRACT REQUIREMENTS. Subcontractor's attention is specifically directed to any provisions of the Contract Documents which may refer to termination, renegotiation of subcontracts, and/or any special requirements such as Buy America Act, Equal Employment Opportunity, Affirmative Action, minimum wage requirements, et al. Subcontractor agrees to be bound by all such relationships.

3.02 RELATIONSHIP OF CONTRACTOR AND SUBCONTRACTOR. Subcontractor accepts the relationship of trust and confidence established between it and Contractor by this Agreement. Subcontractor further covenants with Contractor to furnish its best skill and judgment and to cooperate with Contractor, Owner and Owner's Architect or authorized representatives in furthering the interests of the Contractor and Owner. Subcontractor agrees to furnish efficient business administration and superintendence and to use its best efforts to furnish at all times an adequate supply of laborers and materials, and to perform the Work in the best way and in the most expeditious and economical manner consistent with the interests of Contractor and Owner.

3.03 OWNER'S APPROVAL. This Subcontract and Subcontractor is subject to the approval of Owner and/or its authorized representative, if the Contract Documents provide for such approval.

3.04 BOND REQUIREMENTS. Subcontractor's bonds shall be on a form provided by or satisfactory to Contractor and shall be issued by a surety satisfactory to Contractor. Any such bond shall name Contractor as the Obligee and to the extent required by the Contract Documents, the Owner and any other parties. The Surety shall be bound by the Arbitration provisions of this Subcontract. Notwithstanding Subcontractor's performance of the duties and obligations herein described, the insolvency of Subcontractor's surety or the revocation of Subcontractor's surety's right to do business or its license to issue bonds in the state where the project is located may be deemed by Contractor, at its sole discretion, as an incident of default on the part of Subcontractor and shall render this Subcontract terminable at the option of Contractor, unless within three (3) days following notification to Subcontractor by Contractor of such default, Subcontractor furnishes an alternative bond satisfactory to the Contractor. If a satisfactory alternative bond cannot be provided, Subcontractor shall provide such substitute evidence of financial ability to complete the work and Subcontractor's obligations herein as may be directed by the Contractor, at Contractor's sole discretion.

3.05 COVENANT AGAINST CONTINGENT FEES. Subcontractor warrants that no person or selling agency has been employed or retained to solicit or secure this Subcontract, pursuant to an agreement or understanding for a commission, percentage,

Initialed:
Subcontractor/Supplier

3/14/11

## SHORES
## SUBCONTRACT GENERAL TERMS

brokerage, or contingent fee, excepting bona fide employees or bona fide established commercial or selling agencies maintained by Subcontractor for the purpose of securing business. In the event of a breach of this warranty by Subcontractor, Contractor shall have the right to declare this Subcontract null, void and without further force and effect without notice of default; and, at Contractor's sole discretion, to deduct from the contract price or consideration, or otherwise recover, the full amount of such commission, percentage, brokerage or contingent fee from Subcontractor.

3.06 POSSESSION PRIOR TO COMPLETION. Whenever Contractor, in its sole discretion deems it useful or necessary for the prosecution of the Work, Contractor shall be permitted to occupy or use any portion of the Work which has been either partially or fully completed by Subcontractor before final inspection and acceptance thereof by Owner; but such use or occupation shall not relieve Subcontractor of its guarantee of materials and workmanship required by the Contract Documents, or of its obligation to make good at its own expense any defect in materials or workmanship which may occur or develop prior to final payment. Provided, however, Subcontractor shall not be responsible for the maintenance of such portion of the Work as may be used or occupied by Contractor, nor for any damages thereto that arise out of or are caused by the negligence of Contractor during such period of use or occupancy.

### ARTICLE IV.  PAYMENTS TO SUBCONTRACTOR

4.01 APPLICATION OF PAYMENT.  On the twenty-fifth (25th) day of each month or such other day of the month specified by Contractor, Subcontractor shall submit to Contractor an itemized application for payment (hereinafter "Application for Payment") showing that portion of the earned Subcontract sum to which Subcontractor claims it is entitled, based upon its estimate of that portion of the Work to be performed by the last day of the calendar month for which each such Application for Payment is being submitted, less the aggregate of previous payments made by Contractor. The Application for Payment shall be made in a form specified or approved by Contractor.

4.02 REQUIREMENTS FOR APPLICATION.  Each Application for Payment shall be supported by the following documentation on forms specified or approved by Contractor:

(a) A detailed and itemized payment schedule, describing the various parts of the Work and percentage of completion of the Work by Subcontractor, for which the progress payment is requested;

(b) Subcontractor's sworn lien waiver, waiving any and all mechanic's and materialmen's liens against the Project, and any monies payable to Subcontractor for the entire amount covered by said Application for Payment;

(c) Sworn lien waivers or other documents satisfactory to Contractor evidencing the payment by Subcontractor for all labor, services, material and equipment incorporated into the Work, and referable to each such Application for Payment;

(d) Such additional documents as may be required by the terms of the Contract Documents.

Subcontractor understands and acknowledges that Contractor may, in its sole discretion, refuse to accept any Application for Payment from Subcontractor which has not satisfied the requirements of this Subcontract, or which has not been submitted by the date specified above.

4.03 TIME OF PAYMENT.  No progress payment to Subcontractor shall become due to Subcontractor until the expiration of ten (10) days following payment by Owner to Contractor for that portion of the Subcontract Sum covered by the Application for Payment. If Contractor receives payment from Owner for less than the entire value of the Application for Payment submitted by Subcontractor, Subcontractor agrees that the amount of the progress payment due Subcontractor shall be reduced accordingly.

4.04 NO ACCEPTANCE.  No progress payment to Subcontractor by Contractor shall constitute approval or acceptance of the Work not in accordance with the Contract Documents.

4.05 WITHHOLD AND DEDUCTION.  Contractor, in its sole discretion, may decline to approve an Application for Payment submitted by Subcontractor, or withhold and/or deduct from any amount due or to become due to Subcontractor, such amounts as Contractor deems reasonably necessary to ensure that the quality of the Work is in accordance with the requirements of the Contract Documents, and/or to the extent that such action may be reasonably necessary, in the sole judgment of Contractor, to avoid loss because of:

(a) Defective Work not remedied by Subcontractor;

(b) The existence of probability of third party claims;

(c) Failure of Subcontractor to make prompt, proper payment to persons supplying labor, materials, services and equipment to the Work;

(d) Reasonable doubt that the Work can be completed for the unpaid balance of the Subcontract sum;

(e) Damage to Contractor, or Owner, or another contractor by Subcontractor, its agents, employees or anyone at its direction;

(f) Reasonable indication to Contractor that Subcontractor will not complete the Work within the Contract time and/or in accordance with Contractor's schedule; and

(g) Unsatisfactory prosecution of the Work by Subcontractor.

4.06 SCHEDULE OF VALUES.  Subcontractor shall, within ten (10) days after the date of execution of this Subcontract, submit to Contractor, its Schedule of Values or detailed itemization of its price for the Work, in a form specified or approved by Contractor. Subcontractor shall list material costs separately, at Subcontractor's cost, and without additional charges for overhead, handling, or profit. Refer to Contract Exhibit B, Attachment B.

4.07 MITIGATION.  Contractor may advance such sums as Contractor, in its sole discretion, deems reasonably necessary to protect Contractor, Owner or the Project, from damages or loss due to Subcontractor's failure, refusal or neglect to pay persons who provide labor, materials, services and/or equipment to the Work. In the event that Contractor advances such sums, Subcontractor agrees to pay Contractor, an amount equal to ten percent (10%) of each such advance, as compensation to Contractor for administrative costs incurred for such advance. This election to advance funds shall not be deemed or construed as an obligation or duty on the part of Contractor to make any such advance. Subcontractor further agrees that Contractor may deduct the amount of any advance, including the administrative cost noted above, from any progress payment or amount due or to become due to Subcontractor.

4.08 FINAL PAYMENT.  Neither Final Payment or any retention shall become due to Subcontractor until ten (10 ) days following the date upon which Contractor has received final payment of the remaining Contract Sum from Owner and the applicable statutory period for filing mechanics' and materialmen's liens has expired. In order to obtain Final Payment of the Subcontract Sum, Subcontractor shall submit to Contractor, for Owner's approval, the following documents, together with its final Application for Payment:

(a) Subcontractor's sworn release of lien and claims, in a form specified or approved by Contractor for the entire amount of the Subcontract sum, as amended;

(b) Documents evidencing the payment of all persons supplying labor, materials, services and equipment to Subcontractor in the completion of the Work, satisfactory to Contractor;

(c) Consent of Subcontractor's surety;

(d) All guarantees, warranties, certificates, operating instructions, manuals and as-built or record drawings as may be required by the Contract Documents; and

(e) Such other documents as may be required by the Contract Documents.

### ARTICLE V.  CHANGES

5.01 CHANGE ORDER.  Contractor may, at any time, without invalidating the Subcontract and without notice to the surety, by written order designated or indicated to be a "Change Order," make any change in the Work within the scope of the Subcontract, including additions, deletions or revisions of the drawings and specifications; the method or manner of performance of the Work; the quality or type of any Owner- and/or Contractor-furnished facilities, equipment, services or site; or direct any acceleration in the performance of the Work. Except as herein provided, no order, statement or conduct of Contractor, Owner or its authorized representatives shall be treated as a change under this section, or entitle Subcontractor to an equitable adjustment hereunder.

5.02 LIMITATION ON CHANGES REQUESTED BY SUBCONTRACTOR.  If Contractor directs any change to the Work, as defined above, and such change, as directed by Contractor, serves to amend or modify the scope of the Work described herein, then the Subcontract Sum shall be equitably adjusted according to the terms and conditions of this Subcontract and the Contract Documents. However, no claim for any such change by

3/14/11

Initialed:
Subcontractor/Supplier

# SHORES
## SUBCONTRACT GENERAL TERMS

Subcontractor shall be allowed unless Subcontractor provides written notice to Contractor within ten (10) days of the date on which any such change is ordered by Contractor, or any such changes in the drawings, specifications or Contract Documents are submitted to Subcontractor by Contractor. In order to make a claim for a change in the Work described herein, Subcontractor shall provide to Contractor a written notice stating the date, circumstances and source of the proposed change and that Subcontractor regards the modification to its scope of Work as a change for which a claim may be made.

5.03 COMPENSATION ON A COST-PLUS BASIS. In the event that Contractor directs or orders a change to Subcontractor's scope of Work for any of the items described herein, and Contractor and Subcontractor fail to agree on the amount of an equitable adjustment for such change, Contractor may, in its sole discretion, direct Subcontractor to proceed with any such change on a "cost-plus" basis, the amount of any such change (whether additive or deductive) to the Subcontract Sum, shall be calculated by totaling the following items:

(a) The direct cost to Subcontractor of material quantities, by unit cost, without mark-up or addition for overhead and profit;

(b) Subcontractor's cost of labor, including only wages, payroll taxes, worker's compensation premium, and contractually required fringe benefits which are directly applicable to the wages, standard in the industry and properly allocable to the change affecting the Subcontractor's scope of Work;

(c) Direct cost of construction equipment, to the extent necessary to implement the change;

(d) The cost of sales, excise taxes assessed by municipal or state taxing authorities directly related to the change to the scope of Work of Subcontractor; but expressly excluding provision for income tax assessment; and

(e) Compensation to Subcontractor for all indirect costs associated with the change to Subcontractor's scope of Work, including, but not limited to, home office overhead, field supervision, and profit. However, the total of any indirect cost shall not exceed ten percent (10%) of the total of subparagraphs (a), (b) and (c). Subcontractor agrees that no claim for compensation for a change to Subcontractor's scope of Work shall be allowed for any indirect costs not noted above, including, without limitation, consequential damages, impact, disruption, loss of efficiency, "ripple" escalation or other extraordinary or consequential costs, arising directly or indirectly out of the Work contemplated by any change under this section.

5.04 CHANGE ORDER RELEASE. Upon agreement between Contractor and Subcontractor as to the amount of any equitable adjustment to the Subcontract Sum as a result of a Change Order, Subcontractor agrees that the execution of any such Change Order constitutes a mutual accord and satisfaction as to the Work covered by the Change Order, and Subcontractor specifically waives and releases any and all claims, rights or interests including, but not limited to, those for impact, disruption, loss of efficiency, "ripple" escalation costs or any extraordinary or consequential costs, arising directly or indirectly out of the Work described in each such Change Order.

### ARTICLE VI. DELAYS AND EXTENSIONS OF TIME

6.01 DELAYS. As used herein, the term "Subcontract Time" shall mean and refer to amount of time determined and directed by Contractor, in its sole discretion, for the performance of Subcontractor's scope of work, either with reference to Contractor's internal schedule, or the Contract Documents. In the event that Subcontractor's completion of the Work, or a scheduled phase thereof, or Subcontractor's performance of the Subcontract is delayed or disrupted by acts of the Owner, Contractor or other subcontractors, Subcontractor may request an extension of the Subcontract Time for completion of its obligations, as its sole remedy for any such delay or disruption. Subcontractor agrees that it shall not be entitled to any increase in the Subcontract Sum, or damages or additional compensation thereto, as a consequence of such delay or disruption, except to the extent that such damages or additional compensation is allowed to Contractor under the Contract Documents, and further limited to the extent of any compensation received by Contractor on behalf of Subcontractor from Owner as and for such delays. Subcontractor hereby irrevocably appoints Contractor as its attorney in fact for the prosecution of any such claims for damages or additional compensation arising out of delays caused by Owner or its authorized representative, and expressly waives and releases any claim for damages or additional compensation against Contractor, on account of any such delay or disruption associated therewith.

6.02 EXTENSIONS OF TIME. No allowance or an extension of time for any cause whatsoever shall be provided to Subcontractor, unless Subcontractor provides written notice to Contractor of its claim for such extension of time within three (3) calendar days subsequent to the occurrence of any such delay; provided, however, that if the Contract Documents provide for a shorter period than three (3) days notice, Subcontractor shall provide its written notice to Contractor within sufficient time for Contractor to provide its notice to Owner within the time allowed by the Contract Documents for such notice. Contractor, in its sole discretion, may grant such extensions of the Subcontract Time as are appropriate in its judgment for periods of excusable delay. Any extension of the Subcontract Time by Contractor shall be in writing and signed by a corporate officer of the Contractor.

6.03 LIMITATION ON EXTENSION OF TIME. No extension of the Subcontract Time shall be granted to Subcontractor from Contractor for any period of delay or disruption arising out of, resulting from or caused by the fault of Subcontractor, its Sub-Subcontractors or any other person or entity employed directly or indirectly by them on the project, including, but not limited to, any delays encountered by Subcontractor in preparation of such samples

and/or shop drawings, and securing the approval of Owner or its authorized representative, where Subcontractor could, by the exercise of reasonable diligence and judgment, have anticipated and avoided any such delay.

6.04 LIQUIDATED DAMAGES. Subcontractor acknowledges that Contractor's schedule and the Subcontract Time are material and substantial terms of this Subcontract, and hereby covenants and agrees to observe and perform its obligations under this Subcontract within the Subcontract Time and according to Contractor's schedule, as amended, time being of the essence in this Subcontract. Contractor and Subcontractor also agree that, in the event of Subcontractor's failure to complete the Work described herein or a scheduled phase of the Work according to the Subcontract Time and Contractor's schedule, as amended, Contractor will suffer certain elements of damage which will be difficult or impossible to ascertain, including the following:

(a) Cost of compensatory damages to Owner for Contractor's inability to complete the Work described in the Contract Documents within the Contract Time;

(b) Damages suffered by Contractor, including limitation on its bonding capacity, lost profits and lost income resulting from Contractor's inability to perform other Work; and

(c) Damages suffered by Contractor arising out of increased costs of field supervision, home office overhead, additional direct costs of labor and materials on the project.

In the event Subcontractor fails to complete the Work or a scheduled phase thereof within the Subcontract Time or within Contractor's schedule, as amended, Subcontractor shall pay to Contractor as and for liquidated damages the following amounts:

(a) The amount assessed against Contractor by Owner for liquidated damages as set forth in the Contract Documents if any; plus

(b) An amount equal to one percent (1%) of the total Subcontract Sum, as adjusted by Change Order, for each day of delay for which Subcontractor's failure to complete the Work prevents Contractor's completion of its Work within the Contract Time or an amount equal to the Contractors cost for the additional down time resulting from Subcontractor's delay, whichever is greater; plus

(c) If Subcontractor's delay applies to a scheduled phase of the Work, an amount equal to one percent (1%) of the partial payment set forth in Subcontractor's schedule of values which is applicable to the scheduled phase of the Work which has been delayed, for each day of such delay.

Subcontractor further agrees that Contractor may deduct such liquidated damages from any amounts due or to become due to Subcontractor.

### ARTICLE VII. DEFAULT AND TERMINATION

7.01 DEFAULT. Subcontractor shall be in default of this Subcontract if:

(a) Subcontractor becomes insolvent, is adjudged a bankrupt, or makes a general assignment for the benefit of its creditors, or becomes the subject of any proceeding commenced under any statute or law for the relief of debtors; or

(b) A receiver, trustee or liquidator of any other property or income of Subcontractor shall be appointed; or

(c) Subcontractor refuses or fails to prosecute the Work or any scheduled phase thereof with such diligence as will insure the completion of the Work described hereunder within the Subcontract Time or within Contractor's schedule; or

(d) Subcontractor fails to make prompt, proper payment to all persons supplying labor, materials, services and equipment to its prosecution of the Work; or

3/14/11

Initialed:
Subcontractor/Supplier

## SHORES
## SUBCONTRACT GENERAL TERMS

(e) Subcontractor persistently disregards laws, ordinances, rules and regulations or orders of any public authority having jurisdiction; or

(f) Subcontractor fails to coordinate its Work with Contractor, other subcontractors retained by Contractor, or other contractors on the project retained by Owner; or

(g) Subcontractor fails to promptly replace rejected material or correct rejected workmanship; or

(h) Subcontractor fails to observe any other term, provision, condition, covenant and agreement of materiality in this Subcontract to be observed and performed on the part of Subcontractor.

In the event of any default by Subcontractor under this Subcontract, Contractor shall have the right to terminate this Subcontract in accordance with the following provisions, in addition to any and all other remedies which Contractor may now or hereafter have.

7.02 NOTICE AND OPPORTUNITY TO CURE. If Subcontractor is in default of its obligations or performance under this Subcontract, or the Contract Documents, as defined above, Contractor shall provide written notice of such default to Subcontractor and demand that such default in Subcontractor's performance be cured. In the event that Subcontractor's default in the performance of its obligations continues for a period of three (3) calendar days after the Subcontractor's receipt of Contractor's written notice of default, Contractor shall, in its sole discretion, and in addition to any remedies Contractor may have, in this Subcontract and at law, be entitled to any or all of the following remedies:

(a) Advance costs to provide such labor, materials, supervision, tools, equipment or other matters as Contractor, in its sole discretion, deems necessary to complete the Work and deduct the costs so advanced, together with the administrative handling charge set forth in Section 4.07 from any payment (whether final payment or progress payment) then due or to become due to Subcontractor.

(b) Terminate Subcontractor's rights under this Subcontract to proceed with the Work, or such part of the Work as has been affected by Subcontractor's default. Contractor may, in its sole discretion, thereafter take over the Work and prosecute the same to final completion by contract with any other person or firm, or with Contractor's own work force. If Contractor so elects, Contractor may take possession of and utilize in completing the Work, all such materials, equipment, and facilities as may be on the site of the Work and necessary therefore. If Subcontractor's right to proceed with the Work is terminated in its entirety, Subcontractor shall not be entitled to receive any payment that may be claimed by Subcontractor until final completion of the project, and after Contractor has assessed and charged Subcontractor with all direct and consequential costs and damages for which the Subcontractor shall be liable to Contractor pursuant to this Subcontract or the Contract Documents. Whether or not Subcontractor's right to proceed with the Work is terminated as aforesaid, Subcontractor and its surety shall be liable for any damage due Contractor resulting from Subcontractor's refusal or failure to substantially complete the Work or any separate part thereof within the Subcontract Time, or according to Contractor's schedule.

(c) In the event that Contractor elects, in its sole discretion, to terminate Subcontractor's rights under this Subcontract to proceed with the Work, Contractor may enter upon the project site and, for the purpose of completing the Work, take possession of all materials, equipment, tools, plant and facilities of Subcontractor. Subcontractor shall assign and transfer to Contractor all materials, plant, equipment, tools and facilities for which payment has, or will be made under this Subcontract, together with all of Subcontractor's subcontracts, orders and commitments for the project. Subcontractor further agrees to execute and deliver all such documents and take any and all such action as Contractor may direct to fully invest in Contractor the rights of Subcontractor in and to the same. Subcontractor shall, as directed by

Contractor, cancel such subcontracts, orders and commitments, and, if necessary, sell, at such price as may be approved by Contractor, in its sole discretion, such materials, equipment, tools, plants and facilities as Contractor shall direct, the proceeds to be paid or credited to Contractor.

7.03 TERMINATION AND DAMAGES. If Contractor terminates Subcontractor's right to proceed with the Work, the damage resulting to Contractor will consist of actual damages suffered, together with any costs occasioned the Contractor to achieve or complete the scope of Work set forth herein. The actual damages and costs of completion which Contractor may incur include, without limitation, the cost of materials, labor, subcontracts, transportation, equipment, expense and rentals thereon, supplies, services, equipment, taxes, appliances, tools, utilities, power, supervision, administration, job overhead, travel, legal and accounting fees and expenses, Contractor's actual or estimated overhead, and payment of any and all claims against Subcontractor by third parties which may be paid or compromised by Contractor in order to protect Owner. The actual damages and costs of completion suffered by Contractor may be deducted from any sums which are due or may become due to Subcontractor, including final payment. If the actual damages and costs of completion suffered by Contractor, as set forth above, after such termination, do not exceed the Subcontract Sum, as amended, Contractor shall pay so much of the Subcontract Sum as reserved to Subcontractor at the date of such termination, in accordance with the Contract Documents, less Contractor's actual damages and costs of completion. If the actual damages and costs of completion suffered by Contractor are in excess of the Subcontract Sum, Subcontractor and/or Surety shall pay to Contractor the difference between such amounts.

7.04 NO WAIVER. The failure of Contractor to notify Subcontractor of any default under the Contract Documents shall not be deemed to be a waiver by Contractor of any continuing default by Subcontractor of any term, covenant, or condition set forth in the Subcontract or the Contract Documents. The failure of Contractor to insist upon strict performance of any of the terms, covenants or conditions of the Contract Documents, or to exercise any right, remedy or option of the Subcontract or the Contract Documents in any one or more instances, shall not be construed as a waiver or relinquishment for the future of any such terms, covenants, conditions or options but the same shall be and remain in full force and effect.

7.05 TERMINATION FOR CONVENIENCE. In the event the Contract between Owner and Contractor is terminated, or Work is stopped or delayed on the project for any reason permitted in the Contract Documents, or by direction of governmental authority, Contractor shall have the right to terminate this Subcontract, without penalty, and/or cause Subcontractor to stop all Work pending resolution of the cause of any such Work stoppage or delay. In the event of such Work stoppage, delay or termination, and unless otherwise permitted by the Contract Documents, Subcontractor shall be entitled to payment under this Subcontract only for the actual value of the Work in place, according to Contractor's schedule of values, in addition to materials delivered and accepted by Owner, and confirmed, non-cancelable material purchase contracts in place at the time of Work stoppage or termination by Contractor. Subcontractor covenants that, in the event of any such Work stoppage or termination under this section, Subcontractor shall not be entitled to additional compensation other than that set forth above, including, without limitation, anticipatory profit or damages for any such termination, assertion of a claim in quantum meruit or other measure of damages other than stated herein or any such compensation in excess of the amount paid to Contractor by Owner for the Work of Subcontractor up to the date of termination.

### ARTICLE VIII. DISPUTES AND ARBITRATION

8.01 ARBITRATION. All controversies, including those arising or asserted after substantial completion of the Work, and except as otherwise provided in this section or stated to the contrary in any other section of this Subcontract, arising out of or pertaining to the performance of the Work referred to in this Subcontract or regarding the interpretation of the provisions of this Subcontract, irrespective of the legal theory upon which such controversy is founded, shall be submitted to and resolved by binding arbitration in the manner hereinafter provided. In any event, if the controversy arises during performance of the Work, the Subcontractor shall continue to perform expeditiously the scope of Work described herein or directed by Contractor to be performed pursuant to this Subcontract. If any dispute or controversy arises in connection with any matter involving a direction, order, opinion or ruling of the Owner or any of the Owner's representatives, then the Subcontractor and Subcontractor's Surety or Sureties shall be bound by said ruling, direction, opinion or order to the same extent as the Contractor may be bound.

8.02 CONDITIONS FOR ARBITRATION DEMAND. It is further agreed that in the event the Contractor exercises any of the rights granted to it under "Default and Termination" of this Subcontract, the Subcontractor shall have no rights to arbitration, and the right to demand arbitration shall be vested solely at the discretion of the Contractor. If Subcontractor claims that any of the demands made by the Contractor hereunder are improper, Subcontractor must, nevertheless, fully comply therewith, and its right to arbitration shall exist only in the even it fully complies with the direction of the Contractor and completes all of its Work hereunder. If the Subcontractor refuses to comply with the demands of the Contractor and fails to continue with the performance of the Work hereunder because the Contractor exercises any right granted under Article V-Changes and VIII-Default and Termination or any other portion of this Subcontract, the right to arbitrate any claims arising hereunder shall be exclusively vested in the Contractor; and in the event any claims are made by the Subcontractor and the Contractor demands arbitration, the Subcontractor hereby waives all rights to contend that the right to arbitrate under such circumstances lacks mutuality.

3/14/11

Initialed:
Subcontractor/Supplier

# SHORES
## SUBCONTRACT GENERAL TERMS

**8.03 POWER OF ARBITRATORS.** Arbitration shall be had by a panel of three (3) arbitrators in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association, as said rules may be in effect at the time the arbitration is initiated. Should any party refuse or neglect to appear or participate in the arbitration proceedings, the arbitrator is empowered to decide the controversy in accordance with whatever evidence may be presented. The award rendered by the arbitrators shall be final and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction.

**8.04 NOTICE OF DEMAND FOR ARBITRATION.** The Subcontractor shall give the Contractor written notice of its intent to arbitrate any claim within three (3) days of the commencement of the event for which claim is made. Otherwise, such claims and the right to arbitrate shall be deemed waived. Notice shall be provided in a shorter period of time if required to permit Contractor sufficient time to give notice to the Owner or others as required in the Contract. All requests for arbitration by the Subcontractor relating to extensions of time, additional compensation due to changes in the Work or delay, or payment shall be made in writing thirty (30) days after the discovery of the occurrence of the events giving rise to the dispute or controversy. In the event Subcontractor fails to make such request in writing within the time stipulated herein, the Subcontractor hereby waives all rights, claims or demand with respect to such items. Acceptance of final payment by the Subcontractor shall constitute Subcontractor's waiver of all claims by Subcontractor but shall in no way relieve the Subcontractor of liability for its obligations for warranties and guarantees or for faulty or defective work appearing after final payment. All other demands for arbitration shall be made in writing by the party asserting the claim within a reasonable time after the claim has arisen and in no event after the later to occur of:

(a) Two (2) years after the entry of final award or judgment in any proceeding between the Owner and Contractor to which Subcontractor was not a party and for which Contractor contends Subcontractor may be wholly or partially liable; or

(b) The date when institution of legal or equitable proceedings based on such claim would be barred by the applicable statute of limitations.

**8.05 AWARD.** The terms, conditions, decisions, rulings, actions, orders or directions of the Owner's representatives, as used in the various sections of this Subcontract, shall be deemed to include the award or decision of any arbitration board authorized by the Contract Documents to determine any controversy between the Owner and the Contractor; provided, however, that the Contractor shall have previously given the Subcontractor written notice of such arbitration. In all such cases, there shall be no right of arbitration as between the Subcontractor and the Contractor, and the award, decision or ruling of the arbitration board shall be final and conclusive upon the Subcontractor, and shall have the same force and effect as if the Subcontractor were a party to the arbitration proceedings from their commencement.

**8.06 NO WAIVER.** The Contractor shall not be deemed to have waived its right of arbitration under this Subcontract by filing suit, provided that the Contractor files suit in order to prevent the running of the statute of limitations or in order to obtain the benefit of some provisional remedy, such as an attachment or injunctive relief; and the Contractor stays substantive court proceedings pending arbitration.

**8.07 JOINDER OF SURETY.** The Subcontractor's surety or sureties issuing bonds required by this Subcontract will be parties to and will be included in any arbitration under this Subcontract upon written demand therefore by Contractor or Subcontractor; provided, however, that the failure or refusal or said surety or sureties to participate in arbitration herein shall not be construed to relieve Contractor or Subcontractor of their respective election to arbitrate under this Subcontract. Subcontractor's surety or sureties shall be bound by the Arbitration Board's decisions or rulings. Any arbitration under this Subcontract may, at the option of the Contractor, by consolidation, joinder or otherwise, include such other persons involved in or affected by the decision by such arbitration.

**8.08 LIMITATION.** Nothing herein contained shall be construed to grant to Subcontractor or sureties any right to arbitration under any circumstances except to the extent expressly granted to those parties under this Subcontract.

**8.09 INCLUSION OF SUBCONTRACTOR.** Subcontractor agrees to be included as an additional party in any arbitration proceeding between Owner and Contractor arising from the design and/or construction of the Work.

**8.10 ADDITIONAL PARTIES.** Contractor and Subcontractor agree that their contract documents will contain similar arbitration provisions as stated herein and that these provisions shall include an agreement to consolidation or joinder to permit disposition of all claims, disputes or other matters relating to the project so that complete relieve is accorded in one arbitration proceeding if either party hereto so requests.

**8.11 GOVERNING LAW.** Subcontractor agrees that this "Arbitration" section shall be construed and enforced in accordance with the law in effect in the state where the Work is to be performed, and that the venue for such arbitration proceedings shall be the location of the Contractor's office as listed in this Subcontract.

**8.12 DISCOVERY.** Discovery, if allowed by the arbitrators, shall be strictly limited to those items directly related to, and necessary for, resolution of the claim submitted to arbitration. No party shall be entitled to discovery of the financial records of any other party except upon a specific finding by the arbitrators that such financial records are directly related to and absolutely necessary for resolution of the claim submitted to arbitration.

**8.13 NO APPLICATION OF ARBITRATION.** The agreement to arbitrate shall not apply to any claim:

(a) Of contribution or indemnity asserted by one party to this Agreement against the other party and arising out of an action brought in a state or federal court or in arbitration by a person who is under no obligation to arbitrate the subject matter of such action with either of the parties hereto; or does not consent to such arbitration; or

(b) Asserted by the Subcontractor against the Contractor if the Contractor, or Subcontractor through the Contractor, asserts said claim, either in whole or part, against the Owner.

In any dispute arising over the application of this paragraph, the question of arbitrability shall be decided by the appropriate court and not by arbitration.

### ARTICLE IX. RESPONSIBILITY FOR REPAIRS

**9.01 NOTICE TO CONTRACTOR.** In the event that Subcontractor disputes its responsibility for repair or replacement of any portion of the Work as having been caused by the fault of Contractor, other subcontractors or anyone acting on their behalf, Subcontractor shall notify Contractor in writing, of its intent to dispute its responsibility for any loss or damage within seven (7) days after the commencement of any such loss or damage. Further, Subcontractor shall advise Contractor in writing, at least once for each subsequent fourteen (14) day interval as to any continuing or subsequent loss or damage occurring to the Work. The notice provided by Subcontractor to Contractor shall contain a complete and comprehensive description of such loss or damage, Subcontractor's description of the reasons for any such loss or damage, and the alleged fault or negligence of Contractor, other subcontractors or anyone acting on their behalf as the cause of any such loss or damage. Failure of Subcontractor to comply with the notice provisions of this Section shall be considered a complete waiver and release of Contractor as to any such loss or damage.

### ARTICLE X. INSURANCE

**10.01 PROCUREMENT OF INSURANCE COVERAGE.** Subcontractor shall not commence any work until it obtains, at its own expense, insurance coverages with conditions and limits not less than those set forth below, from insurance carrier or carriers who are licensed, authorized and approved to do business in the state in which the Project is located; said insurance and forms of insurance policies to be satisfactory to Contractor. Subcontractor will not permit any materialman or sub-subcontractor or anyone acting on its behalf to commence work on the Project until evidence of compliance with said insurance requirements has been provided by each such materialman, sub-subcontractor, etc.

**10.02 CONTINUATION OF INSURANCE COVERAGE.** All insurance coverage described in this Section will be maintained by Subcontractor for the full term of the Work performed under this Subcontract, and in no event will such insurance coverage be terminated or otherwise allowed to lapse prior to written certification of final completion and acceptance by Owner. In the event that any or all of the insurance coverages required by this Section are allowed to lapse or are terminated, (1) Subcontractor shall be responsible for the protection of Contractor and Owner as if such terminated or lapsed insurance coverage were still in effect, and (2) Contractor may, at its option, effect the procurement of such insurance coverage as has terminated or been allowed to lapse, at Subcontractor's expense, and deduct the cost thereof from any sum due or to become due to Subcontractor under this Subcontract; provided, however, that if the sum then or thereafter due the

Initialed:
Subcontractor/Supplier

3/14/11

# SHORES
## SUBCONTRACT GENERAL TERMS

Subcontractor hereunder is insufficient to cover such costs, Subcontractor shall pay the difference to Owner; provided, further, that the decision by Contractor to effect such insurance shall not limit or discharge Subcontractor's obligation to protect Contractor and Owner to the full extent required by this Subcontract and the Contract Documents. Subcontractor is advised and agrees that the lapse or termination of insurance coverage which Subcontractor is required to provide under this Subcontract or the Contract Documents, be treated by Contractor, in its sole discretion, as an incident of default of a material condition of this Subcontract.

10.03   ADDITIONAL INSUREDS.   For all coverages provided by Subcontractor pursuant to this Subcontract and the Contract Documents, Subcontractor shall cause to be named, as additional insureds, Contractor, Owner and any other parties required to be named as additional insureds by the Contract Documents.

10.04   EVIDENCE OF INSURANCE.   As evidence of specified insurance coverage, Contractor may, in lieu of actual insurance policies or copies thereof, accept certificates of insurance in a form satisfactory to Contractor, issued by such insurance carrier or carriers as are approved by Contractor. Each policy or certificate will bear an endorsement or statement waiving right of cancellation or reduction in coverage within thirty (30) days' notice in writing to be delivered to Contractor and shall include, in addition to the names of the carrier and the policy number, the names of the insured(s) and additional named insureds, the coverages provided, the policy limits and period of coverage, a list of all exclusions affecting the coverages provided and the waivers of subrogation. Notwithstanding any other provisions of this paragraph, Subcontractor agrees to deliver to Contractor, upon request, certified copies of the insurance policies provided by Subcontractor pursuant to the Contract Documents.

10.05   NO LIMITATION OF LIABILITY.   Nothing contained in these insurance requirements as to types, limits, and Contractor's approval of insurance coverages to be maintained by Subcontractor are intended to and shall not in any manner limit or qualify the liabilities and obligations assumed by Subcontractor under this Subcontract, including, without limitation, Subcontractor's responsibility for payment of damages resulting from its operations under the Contract Documents.

10.06   COVERAGES REQUIRED AND LIMITS OF LIABILITY. Subcontractor shall procure and maintain, at its own expense, the coverages and limits of liability listed below in Table 1 prior to commencing any portion of the Work. In the even that the Contract Documents require additional coverages or higher limits of liability, Subcontractor shall provide such coverages and limits of liability as are required by the Contract Documents at its own expense.

Subcontractor shall procure and maintain, at its own expense, such property and equipment insurance coverage for materials to be provided for portions of the Work, which are stored off site or in transit, where such portions of the Work are to be included in Subcontractor's Applications for Payment.

10.07   WAIVER OF SUBROGATION.   Contractor and Subcontractor hereby waive all rights against each other, and all other subcontractors for damages caused by fire or other perils to the extent covered by said policies of insurance, except such rights as they may have (1) to the proceeds of such insurance, and (2) to payment for damages as set forth in paragraph 10.05 above. Subcontractor shall require similar waivers by all sub-subcontractors performing work on this Project pursuant to Subcontractor's direction.

·Table 1·

Commercial General Liability.
| | |
|---|---|
| Property Damage Liability | $1,000,000.00 each occurrence |
| Personal and Advertising Injury | $1,000,000.00 each occurrence |
| General Aggregate | $2,000,000.00 |
| Products and Completed Operations | $2,000,000.00 aggregate |

Automobile Liability
| | |
|---|---|
| Combined Single Limit for Bodily Injury and Property Damage of Automobile | $1,000,000.00 |
| Worker's Compensation | $1,000,000.00 |
| Professional Liability (Design/Build Only) | $1,000,000.00 each occurrence |
| | $1,000,000.00 annual aggregate |

## ARTICLE XI. MISCELLANEOUS WORK

11.01   CLARIFICATION OF INDEMNIFICATION.   Wherever in the Contract Documents or in this Subcontract, Subcontractor has agreed to indemnify and hold Contractor harmless, such indemnification and hold harmless provision shall be deemed to include claims against Contractor for attorneys fees, costs and expenses.

11.02   REMEDIES CUMULATIVE.   No remedy herein reserved to Contractor is intended to be exclusive of any other remedy, but each and every such remedy shall be cumulative and shall be in addition to any other given in this Subcontract, or the Contract Documents, as now or hereafter existing at law, equity or by statute.

11.03   SUCCESSORS AND ASSIGNS.   Contractor and Subcontractor each binds itself, its partners, successors, assigns and legal representatives to the other parties hereto and to the partners, successors, assigns and legal representatives of such other party in respect to all covenants, agreements and obligations as are contained in this Subcontract or the Contract Documents. Subcontractor shall not assign, mortgage, pledge as security or hypothecate this Subcontract in whole or in part, or submit it as a whole without the prior written consent of Contractor, nor shall Subcontractor assign any monies due or to become due to Subcontractor hereunder without the previous written consent of the Contractor. Any such assignment, mortgage, pledge as security or hypothecation of this Subcontract by Subcontractor, even if approved by Contractor, shall not relieve Subcontractor of its sole obligation and responsibility for timely, accurate, and full completion and coordination of the Work.

11.04   WRITTEN NOTICE.   Any written notice required by either party to be delivered to the other shall be deemed to have been duly served if delivered in person to the individual or member of the company, or to an officer of the company or corporation for whom it was intended, or delivered at or sent by registered or certified mail,

return receipt requested, to the last business address known to the party giving notice.

11.05   ATTORNEYS FEES.   Should either party employ an attorney to institute suit or demand arbitration to enforce any of the provisions hereof, to protect its interest in any matter arising under this Subcontract, or to collect damages for the breach of this Subcontract, or to recover from a surety bond issued for either party to this Subcontract, the non-prevailing party in any final judgment agrees to pay to the other party all reasonable costs, charges, and expenses, including attorney's fees, expended or incurred in connection therewith.

11.06   SEVERABILITY.   In case any one or more provisions set forth in this Subcontract or in the Contract Documents shall, for any reason, be held invalid, illegal or unenforceable in any respect, any such invalidity, illegality or unenforceability shall not affect any other provision of this Subcontract or the Contract Documents, and the Subcontract and Contract Documents shall be construed as if such invalid, illegal or unenforceable provision had never been incorporated therein.

11.07   THIRD PARTY BENEFICIARY.   Neither the Subcontract nor the Contract Documents are intended to, and shall not be deemed or construed to, confer any rights, powers or privileges on any person, firm, partnership, corporation or other entity not a party hereto.

11.08   CAPTIONS.   The captions at the beginning of each section of this Subcontract are for convenience only and are to be given no weight in construing the provisions of this Subcontract.

11.09   GOVERNING LAW.   The Subcontractor will be governed and construed in accordance with the laws of the state in which the Project is located.

3/14/11

Initialed:
Subcontractor/Supplier

# SHORES
## SUBCONTRACT GENERAL TERMS

11.10 COMPLETE INTEGRATION. This Subcontract is a complete integration of every agreement and representation made by or on behalf of Contractor and Subcontractor with respect to the subject matter hereof, and no implied covenant or prior oral or written agreement shall be held to vary the provisions hereof, any law or custom to the contrary notwithstanding. No amendment, waiver or modification of this Subcontract or any term hereof shall be effective unless in accordance with the terms and conditions hereof.

### ARTICLE XII. REFERENCE PROVISIONS

12.01 SUPERINTENDENCE AND COOPERATION. Subcontractor shall be represented on the Project while the Work is in progress with a competent full-time superintendent, satisfactory to the Contractor. Said superintendent shall be experienced in the performance of the Work and shall have authority to direct Subcontractor's labor force and represent the Subcontractor in matters pertaining to the day-to-day performance of Subcontractor's Work. Subcontractor shall cooperate to the fullest extent with the Contractor's superintendent in charge, and shall remove immediately any laborers who are unsatisfactory to the Contractor or Owner or its authorized representatives. If, in the sole opinion of Contractor, Subcontractor's Superintendent fails to adequately supervise and direct Subcontractor's work force so as to achieve substantial completion of the Work in accordance with the Contract Documents, then Subcontractor shall immediately replace said superintendent with a superintendent satisfactory to Contractor.

All laborers or employees of Subcontractor shall work in harmony with those of Contractor. Subcontractor shall furnish Contractor with a statement containing the names, positions, and business telephone numbers of all of its executives, job site superintendents, foremen, and other employees who will be responsible in any way for the management or supervision of the Work within ten (10) days of its receipt of this Subcontract. These persons will be subject to the approval of the Contractor. Subcontractor agrees to maintain a responsible representative on the Project at all times while the Work is in progress and agrees to be represented by a responsible representative at weekly subcontractors meetings at Contractor's field office immediately prior to and during the Work.

12.02 SITE CONDITION. It will be Subcontractor's responsibility to leave the Project site in proper condition to receive the subsequent application of the work of other trades. Before starting the Work, Subcontractor shall examine the Project site and assure itself that all conditions are, at the time Subcontractor begins the Work, such as will allow proper and timely prosecution of the Work and the assumption of warranty requirements. Subcontractor shall notify the Contractor immediately in writing upon discovery of any improper conditions. Commencement of the Work by Subcontractor shall constitute Subcontractor's acceptance of related existing conditions on the Project site as being satisfactory for commencement of the Work and the required or indicated results contemplated by the Contract Documents.

12.03 SCHEDULE. Subcontractor shall prosecute the Work in a prompt and diligent manner when the Work or any part of the Work becomes available for Subcontractor's performance, or at such other time as Contractor may direct, and shall assist Contractor in the progress of the Work to completion. Subcontractor shall not, by delay or otherwise, interfere or hinder the Work of Contractor or any other subcontractor. Subcontractor shall furnish and provide any and all materials, which are to be furnished hereunder in a timely manner, and in sufficient time to enable Subcontractor to perform and complete the Work as required herein. TIME IS OF THE ESSENCE IN THE PERFORMANCE OF ALL OF SUBCONTRACTOR'S DUTIES AND OBLIGATIONS UNDER THIS CONTRACT.

12.04 CONTRACTOR'S SCHEDULE. Subcontractor understands and acknowledges that Contractor may prepare a schedule for its use in executing the Work and/or be required to submit a progress schedule to Owner demonstrating the manner in which the Work is to be completed under the Contract Documents within the Contract Time. Subcontractor shall assist Contractor in the preparation of the progress schedule, as and when requested or directed by Contractor, and shall utilize its best efforts to cooperate its provision of labor and materials to the Project so as to assist Contractor in achieving completion of the Work within the Contract Time. Subcontractor shall confer with Contractor regarding Contractor's internal schedule for completion of phases of the Work and the entire Project. Subcontractor shall be bound by Contractor's schedule, as modified or amended from time to time by Contractor, in its sole discretion. Subcontractor shall commence the Work and each phase thereof at such times and proceed therewith at such places and in such order as Contractor may direct. Upon receipt of written notice from Contractor, Subcontractor shall cease performance of the Work or portions thereof to the extent directed by Contractor, and shall resume performance on receipt of similar notice. Upon demand by Contractor, Subcontractor shall provide a subcontract schedule for approval by Contractor, together with such man power schedules as Contractor may require, for the approval of Contractor, as Contractor may deem necessary to evaluate completion of the Work within the Subcontract Time. Subcontractor shall further submit to Contractor, a monthly procurement and submittal log, in a form satisfactory to, or approved by Contractor, demonstrating such schedules, order dates and delivery dates for Subcontractor's material and equipment, as Contractor may direct. Subcontractor shall submit all shop drawings, samples, production data, lists and such other materials as are required by the Contract Documents, or by Contractor. These documents shall be submitted by Subcontractor to Contractor within fifteen (15) days after the date of execution of this Subcontract. Subcontractor shall further order all of its said materials within five (5) days following the approval of said shop drawings, samples, production data, lists, etc. by Owner or its authorized representative.

12.05 STORAGE OF MATERIALS, VEHICULAR TRAFFIC AND DELIVERY POINTS. Subcontractor shall control and coordinate the storage of its materials and the movement and parking of its vehicles so as not to interfere with the Work of Contractor and all of its subcontractors. All such material as Subcontractor may reasonably anticipate to be utilized in the performance of its Work, from time to time, shall be delivered, unloaded and stocked at the Project site and Subcontractor agrees to bear all costs for the same. Nothing contained herein shall be construed or deemed a duty upon Contractor to provide adequate space for storage of materials at the Project site, nor a covenant or guarantee of sufficient space for parking of Subcontractor's vehicles so as to facilitate loading and unloading. Subcontractor agrees to bear all risk involved in these operations, and expense associated with its storage and movement of materials as well as parking of vehicles.

12.06 RESPONSIBILITY FOR WORK AND MATERIALS. In the event that any material to be used in Subcontractor's performance of its Work hereunder is furnished by Contractor, said materials shall be used without waste, and Subcontractor shall be responsible for payment of any material used in excess of the estimated quantity, or which may become ruined or damaged on account of Subcontractor's fault, carelessness or negligence.

Unless otherwise stated, when material is furnished by Contractor or others, said materials shall be delivered, at Contractor's option, F.O.B. job site or at a designated warehouse or central point at the Project site, either of which shall constitute delivery. Subcontractor shall promptly check all material quantities delivered and immediately report all damages or inconsistencies in the materials to Contractor. Subcontractor shall further report all quantities of materials delivered, each week, to Contractor in writing. Subcontractor shall be responsible for all protection, at its sole expense, for materials ordered by or furnished to it for use in the prosecution of the Work.

12.07 WORKING HOURS; "PIECE WORK." Subcontractor shall provide labor to the Project only during Contractor's regular working hours, unless Subcontractor requests and receives Contractor's prior written approval for work at different hours.

Subcontractor shall compensate its employees on a strict "wage and hour" basis; no portion of Subcontractor's Work to be performed pursuant to this Subcontract shall be performed by a "piece work" method, without prior written approval of an executive officer of Contractor.

12.08 LAYOUT. All layout required for the Work from the reference points established by Contractor is included in the Subcontract Sum and shall be performed by Subcontractor. Subcontractor shall coordinate the Work with all trades to ensure proper installation and Subcontractor is responsible for accuracy of its own layout and the final conditions of finished surfaces.

12.09 DUTIES OF SUBCONTRACTOR. Subcontractor shall be responsible for maintaining proper safety, and fire prevention, including the safety of all persons and property within its scope of Work during the performance of the Work. This requirement will apply continuously and not be limited to normal working hours. Subcontractor shall take all reasonable precautions for the safety of, and shall provide all reasonable protection to prevent damage, injury, or loss to:

(a) All of its employees, agents, materialmen, and subsubcontractors entering the job site, and all other persons who may be affected thereby; and

3/14/11

Initialed:
Subcontractor/Supplier

## SHORES
## SUBCONTRACT GENERAL TERMS

(b) Subcontractor's Work, and all materials and equipment to be incorporated therein, whether in storage on or off the site, under the care, custody or control of Subcontractor, its materialmen and/or sub-subcontractors; and

(c) Other property on the site or adjacent thereto, including trees, shrubs, lawns, walks, pavement, roadways, structures and utilities not designated for removal, relocation or replacement in the course of construction.

Subcontractor shall comply, at its own expense, with all applicable laws, ordinances, rules, regulations and lawful orders of any public authorities having jurisdiction for the safety of persons or property, or to protect them from damage, injury or loss. Subcontractor shall further erect and maintain, as required by existing conditions in progress of the Work, all reasonable safeguards for safety and protection, including posting danger signs or other warnings against hazards, promulgating such safety regulations to its employees, agents, materialmen and sub-subcontractors as may be appropriate and notifying Owners or users of adjacent utilities.

12.10   RESPONSIBILITIES FOR DAMAGE OR LOSS.   All damages or loss to any property described in Article 12.09, subparagraphs (b) and (c) above, caused by Subcontractor, its materialmen, sub-subcontractors or anyone directly or indirectly employed by any of them, or by anyone for whom any of them may be responsible, shall be remedied by Subcontractor at its sole expense, and Subcontractor shall indemnify and save harmless Contractor from any and all claims therefore.

12.11   SAFETY OF PERSONS.   Subcontractor shall comply, at its own expense, with all applicable federal, state and local laws, ordinances and/or regulations, in addition to any safety directives promulgated by Contractor, Owner or its authorized representative. Subcontractor shall designate in writing to Contractor, one of its employees to function as Subcontractor's Safety Coordinator. Subcontractor's Safety Coordinator shall be responsible for implementing the directions of Contractor with respect to the safety of persons on the Project and compliance with all federal, state and local laws, ordinances and regulations. Subcontractor's Safety Coordinator shall also be responsible for ensuring that Subcontractor, its materialmen, sub-subcontractors and any persons acting at its or their direction, shall be furnished with safety equipment, adequate in quality, nature and quantity as may be required for the safe performance of the Work. Such equipment may include, but is not limited to, hard-hats, protective clothing, pneumatic and electrical tools and cords, ladders, walk-ways, ramps, scaffolding and railings. Subcontractor shall not utilize any equipment, tools or any items furnished by Contractor for prosecution of the Work, without the express written permission of Contractor's superintendent in charge. In the event that Subcontractor, its materialmen, sub-subcontractors, employees or anyone acting at their direction utilize any equipment, tools or items furnished by Contractor in the prosecution of the Work, the use of such equipment, tools and other items shall be at Subcontractor's sole risk and responsibility. Any damage, loss and/or injury to person or property occurring from such use shall be the sole responsibility of Subcontractor and Subcontractor shall, without qualification, indemnify, defend and hold harmless Contractor from any and all damage, loss or liability arising out of, resulting from or caused by Subcontractor's use of said equipment, tools or other items, unless such accident, personal injury or property damage occurs as a result of the sole negligence or fault of Contractor. Subcontractor further acknowledges that the provisions of this Subcontract relating to the safety of persons and property, and compliance with all applicable laws, statutes, ordinances and regulations relating thereto constitute a material condition of this Subcontract, such that the failure of Subcontractor to observe and comply with all the provisions of this Subcontract and applicable laws, statutes, ordinances and regulations may subject Subcontractor to termination for default by Contractor.

12.12   REPORTING OF ALL ACCIDENTS.   Subcontractor shall report promptly, in writing, to Contractor, all accidents whatsoever arising out of, or in connection with the performance of the Work specified in this Subcontract, whether on, or adjacent to, the site of the Project, giving full details and statements of witnesses, if any, when such accidents involve (1) death, injuries or illnesses other than minor injuries requiring first aid treatment and which do not involve medical treatment, loss of consciousness, restriction of work or motion, or transfer to another job, sustained by Subcontractor, separate contractors or the employees or supervisor personnel or any of them; or (2) any death, injuries or illnesses sustained by any person not covered by subsection (1) above. Copies of any reports which Subcontractor is required to submit to any federal or state agency which provide for the information required in subsection (1) of this Article 12.12 may be submitted to Contractor in lieu of any separately prepared report. Subcontractor shall promptly provide Contractor with any

additional information which Contractor, Owner or its authorized representative may request concerning any accident which was or should have been reported to Contractor pursuant to this Article 12.12.

12.13   PROTECTION OF WORK AND PROPERTY.   Subcontractor shall at all times safely guard and protect its own work and any adjacent property (as provided by law and the Contract Documents) from damage, until final completion and acceptance thereof by Owner. Subcontractor further agrees that it will repair or replace, at its sole expense, any loss or damage to the Work which occurs prior to said final completion and acceptance by Owner, except to the extent that such loss or damage resulting, arising out of or caused by the sole negligence or fault of Contractor, or sole negligence of other parties.

12.14   MEETINGS.   From time to time, and as Contractor may direct, coordination and project scheduling meetings will be held at the job site. Subcontractor shall cause a qualified representative, satisfactory to Contractor, to attend and participate in these meetings. Subcontractor is advised and acknowledges that its failure to provide a qualified representative for attendance and participation at such meetings shall be cause for Contractor, at its sole discretion, to decline to approve Subcontractor's monthly Applications for Payment.

12.15   HOISTING.   All hoisting required for completion of the work described in this Subcontract shall be provided by Subcontractor, at its sole expense, and shall be included in the amount of the Subcontract Sum. Contractor, in its sole discretion, and under such conditions as it deems advisable, may provide hoisting, receiving, unloading or material handling services as and when it deems appropriate.

12.16   DAILY REPORTS.   Subcontractor shall provide to Contractor such daily reports, in writing, as Contractor may, in its sole discretion, direct, on a form specified or approved by Contractor.

11/8/10

Initialed:
Subcontractor/Supplier

**AMENDED SPECIFICALLY FOR RAILCRAFT INTERNATIONAL (2010), INC. ON FEBRUARY 21, 2013**
**PER CO #3**
**SUBCONTRACT**
(Subject to Arbitration)

Contractor License No. _____949618_____          Job No. _____785_____

Subcontractor License No___N/A_____          Subcontract No. 785-510-08500___

THIS AGREEMENT is made on **October 21, 2011** by and between the Contractor and Subcontractor named below and is as follows:

**A.  DEFINITIONS**
The following terms, for purpose of this Subcontract, shall have the meaning shown:

| | | | | |
|---|---|---|---|---|
| 1. | Contractor Address: | **AMERICAN/ BCEGZ, A JOINT VENTURE**<br>16351 Gothard Street, Suite A<br>Huntington Beach, CA 92647 | 714-377-1414 | fax 714-377-1417 |
| 2. | Subcontractor Address: | **RAILCRAFT INTERNATIONAL (2010), INC.**<br>13272 Comber Way<br>Surrey, BC Canada V3W 5V9    RECEIVED on | 604 635 3771 | fax 604 543 9019 |
| 3. | Project Address: | **SHORES**<br>4201 Via Marina<br>Marina Del Rey, CA 90292    FEB 26 2013   American Main Office | | |
| 4. | Owner Address: | **SHORES, LLC**<br>c/o Pacific Development Services<br>5855 Uplander Way, Suite A<br>Culver City, CA 90230 | 310-216-4800 | fax 310-216-4805 |
| 5. | Architect Address: | **NADEL RESIDENTIAL ARCHITECTS, LLP**<br>1990 South Bundy Drive, 4th Floor<br>Los Angeles, CA 90025 | 310-826-2100 | fax 310-826-0182 |

6.  "Contract Documents" — the "Contract Documents" consist of this Subcontract ("Subcontract"), its Subcontract General Terms, any exhibit or addenda attached hereto, the Contract between Owner and Contractor ("Prime Contract"), all revisions and/or special conditions of the Prime Contract, all plans and specifications for the Project ("Plans and Specifications") and all addenda, amendments and modifications thereto issued either prior or subsequent to the execution of this Subcontract.

7.  "Work" means all work described in Exhibit "A" through "F" listed below and the document referenced herein for the trade of **ALUMINUM GUARD RAIL AND AMENITIES LOUNGE ENCLOSURES** which is described in, or which is reasonably inferable from the Contract Documents and not limited by a specific section of the Plans and Specifications including, without limitation, the furnishing of all supervision, shop and field labor, engineering and design, tools, equipment, materials and supplies necessary to perform the same. The Work is to be complete in all respects and includes all work necessary to satisfy design criteria and applicable building codes, and provides for the furnishing of quality workmanship finished in an efficient and good workmanlike manner. The Work includes all requirements of this Subcontract.

| A. List of Drawings and Specifications<br>(including all Bulletins up to Bulletin 22) | B. Supplementary General Provisions<br>(Revised SOV per CO #3) | C. Additional Specific Requirements<br>(See CO #3 for Revised Specific Requirements |
|---|---|---|
| D. Schedule<br>(Revised per CO #3, 2/21/13) | E. Insurance Requirements | F. N/A per CO #3 |

**B.  SUBCONTRACT SUM**
Contractor agrees to pay Subcontractor for the completion of the Work and the performance of this Subcontract the sum of **FOUR HUNDRED SEVENTY THOUSAND DOLLARS AND ZERO CENTS** (*** $470,000.00***) per CO #3, subject to additions and/or deletions for changes agreed upon or to be determined as hereinafter provided. Partial progress payments will be made to Subcontractor each month subject to the terms and conditions of this Subcontract, in the amount equal to ninety percent (90%) of the value, computed on the basis of the price set forth above, of that portion of the Work then complete, less the aggregate of previous payments.  **ALL APPLICABLE SALES AND USE TAXES ARE INCLUDED.**

**C.  BONDS**
Prior to commencement of the work, if required by the Owner and/or the Contractor, Subcontractor shall furnish performance and payment bonds from a surety licensed and authorized to do business in the State where work will be performed, each in an amount equal to the full Subcontract price. The Owner and/or the Contractor shall pay for such bonds.

**D.  SUBCONTRACT GENERAL TERMS**
The Subcontract General Terms dated March 14, 2011, are attached hereto and incorporated by reference in this Subcontract Agreement.

**E.  ADDITIONAL PROVISIONS**
The Additional Provisions are attached hereto and made a part of this Subcontract Agreement.

1

Subcontractor Initials

AMENDED SPECIFICALLY FOR RAILCRAFT INTERNATIONAL (2010), INC. ON FEBRUARY 21, 2013
PER CO #3

NAME AND POSITION OF PERSON/S ALLOWED TO SIGN LIEN WAIVER RELEASES:

|  | NAME | POSITION |
|---|---|---|
| 1. | ROB ZAYTSOFF | GENERAL MANAGER |
| 2. | DOUG LUNDE | PRESIDENT |
| 3. | VILMA BAKER | CONTROLLER |
| 4. | | |
| 5. | | |
| 6. | | |
| 7. | | |

IN WITNESS WHEREOF, the parties hereto have executed this Subcontract by their proper officers or duly authorized agents, and this Subcontract is not valid until both the Contractor and Subcontractor have executed this Subcontract.

CONTRACTOR:

AMERICAN/ BCEGZ, A JOINT VENTURE

By: _Jeff Y. Chen_

Its: _Sr. Vice President/American Multifamily, Inc._

Date: _2/26/13_

By: _Joseph S. Schuelke_

Its: _Secretary and COO/ BCEGZ-USA, Inc._

Date: _____

SUBCONTRACTOR:

RAILCRAFT INTERNATIONAL (2010), INC.

By: _ROB ZAYTSOFF_

Its: _GENERAL MANAGER_

Date: _FEB. 25/13_

Subcontractor's Federal Employer Identification No. 98-1059051

Subcontractor's State Tax No. _N/A_

NOTE INDEMNIFICATION Article II Paragraph 2.14

2

3



UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

| I. (a) PLAINTIFFS ( Check box if you are representing yourself ☐ ) | DEFENDANTS ( Check box if you are representing yourself ☐ ) |
|---|---|
| AMERICAN/BCEGZ, a joint venture | RAILCRAFT INTERNATIONAL (2010), INC., a Canadian corporation |

| (b) County of Residence of First Listed Plaintiff   Los Angeles | County of Residence of First Listed Defendant   Surrey |
|---|---|
| *(EXCEPT IN U.S. PLAINTIFF CASES)* | *(IN U.S. PLAINTIFF CASES ONLY)* |

| (c) Attorneys (Firm Name, Address and Telephone Number) If you are representing yourself, provide the same information. | Attorneys (Firm Name, Address and Telephone Number) If you are representing yourself, provide the same information. |
|---|---|
| Nomi L. Castle          (310) 286-3400<br>David C. Romyn<br>CASTLE & ASSOCIATES, APLC<br>8383 Wilshire Boulevard, Suite 810, Beverly Hills, CA 90211 | |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1. U.S. Government Plaintiff

☐ 3. Federal Question (U.S. Government Not a Party)

☐ 2. U.S. Government Defendant

☒ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☒ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1. Original Proceeding

☐ 2. Removed from State Court

☐ 3. Remanded from Appellate Court

☐ 4. Reinstated or Reopened

☐ 5. Transferred from Another District (Specify)

☐ 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No   (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☐ Yes ☒ No   ☒ **MONEY DEMANDED IN COMPLAINT: $** Excess of $75,000

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

28 U.S. Code Section 1332

**VII. NATURE OF SUIT** (Place an X in one box only).

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | **TORTS** | **TORTS** | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** | **PERSONAL PROPERTY** | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | | ☐ 310 Airplane | ☐ 370 Other Fraud | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influenced & Corrupt Org. | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 850 Securities/Commodities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | **BANKRUPTCY** | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☐ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Acts | ☒ 190 Other Contract | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 893 Environmental Matters | ☐ 195 Contract Product Liability | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 690 Other | |
| ☐ 895 Freedom of Info. Act | ☐ 196 Franchise | ☐ 360 Other Personal Injury | ☐ 440 Other Civil Rights | **LABOR** | |
| ☐ 896 Arbitration | **REAL PROPERTY** | ☐ 362 Personal Injury-Med Malpractice | ☐ 441 Voting | ☐ 710 Fair Labor Standards Act | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | ☐ 210 Land Condemnation | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 720 Labor/Mgmt. Relations | |
| | ☐ 220 Foreclosure | ☐ 367 Health Care/Pharmaceutical Personal Injury Product Liability | ☐ 443 Housing/Accommodations | ☐ 740 Railway Labor Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 230 Rent Lease & Ejectment | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 445 American with Disabilities-Employment | ☐ 751 Family and Medical Leave Act | |
| | | | ☐ 446 American with Disabilities-Other | ☐ 790 Other Labor Litigation | |
| | | | ☐ 448 Education | ☐ 791 Employee Ret. Inc. Security Act | |

| FOR OFFICE USE ONLY:          Case Number: | Page 1 of 3 |
|---|---|

CV 14 - 08015

CV-71 (06/14)                    CIVIL COVER SHEET

Scanned by CamScanner

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**VIII.  VENUE:**  Your answers to the questions below will determine the division of the Court to which this case will be initially assigned. This initial assignment is subject to change, in accordance with the Court's General Orders, upon review by the Court of your Complaint or Notice of Removal.

| QUESTION A:  Was this case removed from state court? | STATE CASE WAS PENDING IN THE COUNTY OF: | INITIAL DIVISION IN CACD IS: |
|---|---|---|
| ☐ Yes   ☒ No | ☐ Los Angeles, Ventura, Santa Barbara, or San Luis Obispo | Western |
| If "no," skip to Question B. If "yes," check the box to the right that applies, enter the corresponding division in response to Question E, below, and continue from there. | ☐ Orange | Southern |
|  | ☐ Riverside or San Bernardino | Eastern |

| QUESTION B:  Is the United States, or one of its agencies or employees, a PLAINTIFF in this action? | **B.1.** Do 50% or more of the defendants who reside in the district reside in Orange Co.?<br><br>check one of the boxes to the right  → | ☐ YES. Your case will initially be assigned to the Southern Division. Enter "Southern" in response to Question E, below, and continue from there. |
|---|---|---|
| ☐ Yes   ☒ No |  | ☐ NO. Continue to Question B.2. |
| If "no, " skip to Question C. If "yes," answer Question B.1, at right. | **B.2.** Do 50% or more of the defendants who reside in the district reside in Riverside and/or San Bernardino Counties? (Consider the two counties together.)<br><br>check one of the boxes to the right  → | ☐ YES. Your case will initially be assigned to the Eastern Division. Enter "Eastern" in response to Question E, below, and continue from there. |
|  |  | ☐ NO. Your case will initially be assigned to the Western Division. Enter "Western" in response to Question E, below, and continue from there. |

| QUESTION C:  Is the United States, or one of its agencies or employees, a DEFENDANT in this action? | **C.1.** Do 50% or more of the plaintiffs who reside in the district reside in Orange Co.?<br><br>check one of the boxes to the right  → | ☐ YES. Your case will initially be assigned to the Southern Division. Enter "Southern" in response to Question E, below, and continue from there. |
|---|---|---|
| ☐ Yes   ☒ No |  | ☐ NO. Continue to Question C.2. |
| If "no," skip to Question D. If "yes," answer Question C.1, at right. | **C.2.** Do 50% or more of the plaintiffs who reside in the district reside in Riverside and/or San Bernardino Counties? (Consider the two counties together.)<br><br>check one of the boxes to the right  → | ☐ YES. Your case will initially be assigned to the Eastern Division. Enter "Eastern" in response to Question E, below, and continue from there. |
|  |  | ☐ NO. Your case will initially be assigned to the Western Division. Enter "Western" in response to Question E, below, and continue from there. |

| QUESTION D:  Location of plaintiffs and defendants? | A.<br><br>Orange County | B.<br>Riverside or San Bernardino County | C.<br>Los Angeles, Ventura, Santa Barbara, or San Luis Obispo County |
|---|---|---|---|
| Indicate the location(s) in which 50% or more of *plaintiffs who reside in this district* reside. (Check up to two boxes, or leave blank if none of these choices apply.) | ☐ | ☐ | ☒ |
| Indicate the location(s) in which 50% or more of *defendants who reside in this district* reside. (Check up to two boxes, or leave blank if none of these choices apply.) | ☐ | ☐ | ☐ |

| **D.1.  Is there at least one answer in Column A?** | **D.2.  Is there at least one answer in Column B?** |
|---|---|
| ☐ Yes   ☒ No | ☐ Yes   ☒ No |
| If "yes," your case will initially be assigned to the<br>SOUTHERN DIVISION. | If "yes," your case will initially be assigned to the<br>EASTERN DIVISION. |
| Enter "Southern" in response to Question E, below, and continue from there. | Enter "Eastern" in response to Question E, below. |
| If "no," go to question D2 to the right.  → | If "no," your case will be assigned to the WESTERN DIVISION.<br>Enter "Western" in response to Question E, below.   ↓ |

| QUESTION E: Initial Division? | INITIAL DIVISION IN CACD |
|---|---|
| Enter the initial division determined by Question A, B, C, or D above:  → | Western |

| QUESTION F: Northern Counties? | | |
|---|---|---|
| Do 50% or more of plaintiffs or defendants in this district reside in Ventura, Santa Barbara, or San Luis Obispo counties? | ☐ Yes | ☒ No |

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**IX(a). IDENTICAL CASES**: Has this action been previously filed **in this court**?          ☒ NO          ☐ YES

If yes, list case number(s):  _____

**IX(b). RELATED CASES**: Is this case related (as defined below) to any cases previously filed **in this court**?          ☒ NO          ☐ YES

If yes, list case number(s):  _____

Civil cases are related when they:

☐ A. Arise from the same or closely related transactions, happening, or event;

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges.

Check all boxes that apply.  That cases may involve the same patent, trademark, or copyright is not, in itself, sufficient to deem cases related.

**X. SIGNATURE OF ATTORNEY**
**(OR SELF-REPRESENTED LITIGANT):**  David C. Romyn  _____   DATE:  October 16, 2014  _____

**Notice to Counsel/Parties:** The submission of this Civil Cover Sheet is required by Local Rule 3-1.  This Form CV-71 and the information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law, except as provided by local rules of court.  For more detailed instructions, see separate instruction sheet (CV-071A).

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended.  Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability.  (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |

**ORIGINAL**

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### Central District of California

|  |  |
|---|---|
| AMERICAN/BCEGZ, a joint venture<br>*Plaintiff(s)*<br><br>v.<br><br>RAILCRAFT INTERNATIONAL (2010), INC., a<br>Canadian corporation; and DOES 1 through 10, and<br>each of them,<br>*Defendant(s)* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Civil Action No.<br><br>**CV 14-08015** SJO(VBK×) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

RAILCRAFT INTERNATIONAL (2010), INC., a Canadian corporation
13272 Comber Way
Surrey, BC
V3W 5V9, Canada

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:
Nomi L. Castle, Esq.
David C. Romyn, Esq.
CASTLE & ASSOCIATES, APLC
8383 Wilshire Boulevard, Suite 810
Beverly Hills, CA 90211

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

CLERK OF COURT

Date: 10/16/2014

_____
*Signature of Clerk or Deputy Clerk*

1170